# RECEIVED

MAR 1 7 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Rodney K. Justin, A sentient human being, )<br><br>Plaintiff, )<br><br>vs. )<br><br>UNITED STATES, a Federal Corporation, Et )<br>Al., )<br><br>Defendants. ) | Civil No. 1:07-cv-02334-HHK<br><br>**MANDATORY JUDICIAL NOTICE**<br>**OF THE 110TH CONGRESS' H.R. 25**<br>**"FAIR TAX ACT OF 2007"**<br><br>Fed.R.Evid. 201(d) and 902(1) |

**MANDATORY JUDICIAL NOTICE IS HEREBY GIVEN:** that Plaintiff Rodney K.

Justin has discovered new intrinsic evidence that the United States Congress has provisioned to

repeal the income tax and abolish the Internal Revenue Service and hereby submits into

evidence this 110TH CONGRESS – 1ST SESSION'S H.R. 25 "Fair Tax Act of 2007," a Bill

which begins its language in pertinent part: ***"To promote freedom, fairness, and economic***

***opportunity by repealing the income tax and other taxes, abolishing the Internal Revenue***

***Service, and enacting a national sales tax to be administered primarily by the States."*** which

is now before the U.S. Senate. H.R. 25 can also be found at: www.govtrack.us, a United States

Government website that tracks the status of legislative acts and bills pending in Congress. (See

**Exhibit A** attached hereto and incorporated herein by reference.)

It can be reasoned that any man or woman of average intelligence would surmise that the

introduction of this H.R. 25 "Fair Tax Act of 2007" Bill, by its very terms, is documentary

evidence that conclusively establishes the facts, and supports Justin's claims, that the Internal

Revenue Service and the existing tax laws are oppressive, unfair, incoherent, incomprehensive, counterproductive, burdensome, void for vagueness and must be abolished – as admitted and demanded by the United States Congress. Thus, it is reasonable to assert that those members of the United States Congress, who introduced this Bill in opposition to the terrorist enforcement policies, positions, and customs employed by the Internal Revenue Service in the administration of the internal revenue laws, are guilty of being "Tax Protesters," as defined by the Service.

**WHEREFORE,** this Court is hereby NOTICED accordingly, that the following attached H.R. 25 Bill is submitted pursuant to Federal Rules of Evidence 201(d) and 902(1).

Respectfully Submitted.

## VERIFICATION

I, <u>Rodney K. Justin</u>, declare under penalty of perjury pursuant to 28 U.S.C. § 1746(1), and under the laws of the United States of America that I believe the above to be true and correct to the best of my knowledge, understanding and belief. All Rights retained without recourse.

On this _15_ day of _MARCh_____ 2008

Rodney K. Justin, Plaintiff
c/o 620 Virginia Drive
Woodleaf, North Carolina [27054]
(704) 278-4359

**ATTACHMENTS:**

**Exhibit A:**    H.R. 25 – "Fair Tax Act of 2007" (133 pages)

## CERTIFICATE OF SERVICE

I, Rodney K. Justin, hereby certify that on March 16, 2008, I served a true and correct copy of the above Mandatory Judicial Notice of H.R. "Fair Tax Act of 2007" with Exhibit A by Certified Mail, postage fully prepaid and addressed as follows:


Benjamin J. Weir
US Department of Justice
PO Box 227, Ben Franklin Station
Washington, D.C. 20044
Certified Mail: 7004 2890 0003 6819 6975

Rodney K. Justin

**EXHIBIT A:**
H.R. 25 – "Fair Tax Act of 2007"
(133 pages)

I

110TH CONGRESS
1ST SESSION

# H. R. 25

To promote freedom, fairness, and economic opportunity by repealing the
income tax and other taxes, abolishing the Internal Revenue Service,
and enacting a national sales tax to be administered primarily by the
States.

---

## IN THE HOUSE OF REPRESENTATIVES

JANUARY 4, 2007

Mr. LINDER (for himself, Mr. BOREN, Mrs. MYRICK, Mr. MCCAUL of Texas,
Mr. WESTMORELAND, Mr. CULBERSON, Mr. MILLER of Florida, Mr.
PENCE, Mr. CONAWAY, Mr. CRENSHAW, Mr. NORWOOD, Mr. FEENEY,
Mr. DEAL of Georgia, Mr. PRICE of Georgia, Mr. POE, Mrs. JO ANN
DAVIS of Virginia, Mr. TANCREDO, Mr. BACHUS, Mr. GOODE, Ms.
GRANGER, Mr. PEARCE, Mr. BRADY of Texas, Mr. NEUGEBAUER, Mr.
BURTON of Indiana, and Mr. STEARNS) introduced the following bill;
which was referred to the Committee on Ways and Means

---

# A BILL

To promote freedom, fairness, and economic opportunity by
repealing the income tax and other taxes, abolishing the
Internal Revenue Service, and enacting a national sales
tax to be administered primarily by the States.

1     *Be it enacted by the Senate and House of Representa-*

2 *tives of the United States of America in Congress assembled,*

3 **SECTION 1. SHORT TITLE; TABLE OF CONTENTS.**

4     (a) SHORT TITLE.—This Act may be cited as the

5 "Fair Tax Act of 2007".

2

1        (b) TABLE OF CONTENTS.—The table of contents for

2    this Act is as follows:

Sec. 1. Short title; table of contents.
Sec. 2. Congressional findings.

TITLE I—REPEAL OF THE INCOME TAX, PAYROLL TAXES, AND
ESTATE AND GIFT TAXES

Sec. 101. Income taxes repealed.
Sec. 102. Payroll taxes repealed.
Sec. 103. Estate and gift taxes repealed.
Sec. 104. Conforming amendments; effective date.

TITLE II—SALES TAX ENACTED

Sec. 201. Sales tax.
Sec. 202. Conforming and technical amendments.

TITLE III—OTHER MATTERS

Sec. 301. Phase-out of administration of repealed Federal taxes.
Sec. 302. Administration of other Federal taxes.
Sec. 303. Sales tax inclusive Social Security benefits indexation.

3    **SEC. 2. CONGRESSIONAL FINDINGS.**

4        (a) FINDINGS RELATING TO FEDERAL INCOME

5    TAX.—Congress finds the Federal income tax—

6            (1) retards economic growth and has reduced

7        the standard of living of the American public;

8            (2) impedes the international competitiveness of

9        United States industry;

10            (3) reduces savings and investment in the

11        United States by taxing income multiple times;

12            (4) slows the capital formation necessary for

13        real wages to steadily increase;

14            (5) lowers productivity;

3

1          (6) imposes unacceptable and unnecessary ad-
2    ministrative and compliance costs on individual and
3    business taxpayers;

4          (7) is unfair and inequitable;

5          (8) unnecessarily intrudes upon the privacy and
6    civil rights of United States citizens;

7          (9) hides the true cost of government by embed-
8    ding taxes in the costs of everything Americans buy;

9          (10) is not being complied with at satisfactory
10    levels and therefore raises the tax burden on law
11    abiding citizens; and

12          (11) impedes upward social mobility.

13    (b) FINDINGS RELATING TO FEDERAL PAYROLL
14    TAXES.—Congress finds further that the Social Security
15    and Medicare payroll taxes and self-employment taxes—

16          (1) raise the cost of employment;

17          (2) destroy jobs and cause unemployment; and

18          (3) have a disproportionately adverse impact on
19    lower income Americans.

20    (c) FINDINGS RELATING TO FEDERAL ESTATE AND
21    GIFT TAXES.—Congress finds further that the Federal es-
22    tate and gift taxes—

23          (1) force family businesses and farms to be sold
24    by the family to pay such taxes;

4

1         (2) discourage capital formation and entrepre-

2 neurship;

3         (3) foster the continued dominance of large en-

4 terprises over small family-owned companies and

5 farms; and

6         (4) impose unacceptably high tax planning costs

7 on small businesses and farms.

8     (d) FINDINGS RELATING TO NATIONAL SALES

9 TAX.—Congress finds further that a broad-based national

10 sales tax on goods and services purchased for final con-

11 sumption—

12         (1) is similar in many respects to the sales and

13 use taxes in place in 45 of the 50 States;

14         (2) will promote savings and investment;

15         (3) will promote fairness;

16         (4) will promote economic growth;

17         (5) will raise the standard of living;

18         (6) will increase investment;

19         (7) will enhance productivity and international

20 competitiveness;

21         (8) will reduce administrative burdens on the

22 American taxpayer;

23         (9) will improve upward social mobility; and

24         (10) will respect the privacy interests and civil

25 rights of taxpayers.

5

1    (e) FINDINGS RELATING TO ADMINISTRATION OF
2  NATIONAL SALES TAX.—Congress further finds that—

3        (1) most of the practical experience admin-
4    istering sales taxes is found at the State govern-
5    mental level;

6        (2) it is desirable to harmonize Federal and
7    State collection and enforcement efforts to the max-
8    imum extent possible;

9        (3) it is sound tax administration policy to fos-
10    ter administration and collection of the Federal sales
11    tax at the State level in return for a reasonable ad-
12    ministration fee to the States; and

13        (4) businesses that must collect and remit taxes
14    should receive reasonable compensation for the cost
15    of doing so.

16    (f) FINDINGS RELATING TO REPEAL OF PRESENT
17  FEDERAL TAX SYSTEM.—Congress further finds that the
18  16th amendment to the United States Constitution should
19  be repealed.

6

# TITLE I—REPEAL OF THE IN-COME TAX, PAYROLL TAXES, AND ESTATE AND GIFT TAXES

**SEC. 101. INCOME TAXES REPEALED.**

Subtitle A of the Internal Revenue Code of 1986 (relating to income taxes and self-employment taxes) is repealed.

**SEC. 102. PAYROLL TAXES REPEALED.**

(a) IN GENERAL.—Subtitle C of the Internal Revenue Code of 1986 (relating to payroll taxes and withholding of income taxes) is repealed.

(b) FUNDING OF SOCIAL SECURITY.—For funding of the Social Security Trust Funds from general revenue, see section 201 of the Social Security Act (42 U.S.C. 401).

**SEC. 103. ESTATE AND GIFT TAXES REPEALED.**

Subtitle B of the Internal Revenue Code of 1986 (relating to estate and gift taxes) is repealed.

**SEC. 104. CONFORMING AMENDMENTS; EFFECTIVE DATE.**

(a) CONFORMING AMENDMENTS.—The Internal Revenue Code of 1986 is amended—

(1) by striking subtitle H (relating to financing of Presidential election campaigns), and

(2) by redesignating—

(A) subtitle D (relating to miscellaneous excise taxes) as subtitle B,

7

1          (B) subtitle E (relating to alcohol, tobacco,

2     and certain other excise taxes) as subtitle C,

3          (C) subtitle F (relating to procedure and

4     administration) as subtitle D,

5          (D) subtitle G (relating to the Joint Com-

6     mittee on Taxation) as subtitle E,

7          (E) subtitle I (relating to the Trust Fund

8     Code) as subtitle F,

9          (F) subtitle J (relating to coal industry

10    health benefits) as subtitle G, and

11         (G) subtitle K (relating to group health

12    plan portability, access, and renewability re-

13    quirements) as subtitle H.

14 (b) REDESIGNATION OF 1986 CODE.—

15    (1) IN GENERAL.—The Internal Revenue Code

16 of 1986 enacted on October 22, 1986, as heretofore,

17 hereby, or hereafter amended, may be cited as the

18 Internal Revenue Code of 2007.

19    (2) REFERENCES IN LAWS, ETC.—Except when

20 inappropriate, any reference in any law, Executive

21 order, or other document—

22         (A) to the Internal Revenue Code of 1986

23    shall include a reference to the Internal Rev-

24    enue Code of 2007, and

8

1          (B) to the Internal Revenue Code of 2007

2     shall include a reference to the provisions of law

3     formerly known as the Internal Revenue Code

4     of 1986.

5     (c) ADDITIONAL AMENDMENTS.—For additional con-

6 forming amendments, see section 202 of this Act.

7     (d) EFFECTIVE DATE.—Except as otherwise pro-

8 vided in this Act, the amendments made by this Act shall

9 take effect on January 1, 2009.

# 10    TITLE II—SALES TAX ENACTED

## 11 SEC. 201. SALES TAX.

12    (a) IN GENERAL.—The Internal Revenue Code of

13 2007 is amended by inserting before subtitle B (as redes-

14 ignated by section 104(a)(2)(A)) the following new sub-

15 title:

# 16        "Subtitle A—Sales Tax

"Sec. 1. Principles of interpretation.
"Sec. 2. Definitions.

"CHAPTER 1. INTERPRETATION; DEFINITIONS; IMPOSITION OF TAX; ETC.

"CHAPTER 2. CREDITS; REFUNDS

"CHAPTER 3. FAMILY CONSUMPTION ALLOWANCE

"CHAPTER 4. STATE AND FEDERAL COOPERATIVE TAX ADMINISTRATION

"CHAPTER 5. OTHER ADMINISTRATIVE PROVISIONS

"CHAPTER 6. COLLECTION; APPEALS; TAXPAYER RIGHTS

"CHAPTER 7. SPECIAL RULES

"CHAPTER 8. FINANCIAL INTERMEDIATION SERVICES

"CHAPTER 9. ADDITIONAL MATTERS

9

1 **"SEC. 1. PRINCIPLES OF INTERPRETATION.**

2      "(a) IN GENERAL.—Any court, the Secretary, and

3 any sales tax administering authority shall consider the

4 purposes of this subtitle (as set forth in subsection (b))

5 as the primary aid in statutory construction.

6      "(b) PURPOSES.—The purposes of this subtitle are

7 as follows:

8           "(1) To raise revenue needed by the Federal

9      Government in a manner consistent with the other

10      purposes of this subtitle.

11           "(2) To tax all consumption of goods and serv-

12      ices in the United States once, without exception,

13      but only once.

14           "(3) To prevent double, multiple, or cascading

15      taxation.

16           "(4) To simplify the tax law and reduce the ad-

17      ministration costs of, and the costs of compliance

18      with, the tax law.

19           "(5) To provide for the administration of the

20      tax law in a manner that respects privacy, due proc-

21      ess, individual rights when interacting with the gov-

22      ernment, the presumption of innocence in criminal

23      proceedings, and the presumption of lawful behavior

24      in civil proceedings.

10

1        "(6) To increase the role of State governments

2     in Federal tax administration because of State gov-

3     ernment expertise in sales tax administration.

4        "(7) To enhance generally cooperation and co-

5     ordination among State tax administrators; and to

6     enhance cooperation and coordination among Fed-

7     eral and State tax administrators, consistent with

8     the principle of intergovernmental tax immunity.

9   "(c) SECONDARY AIDS TO STATUTORY CONSTRUC-

10  TION.—As a secondary aid in statutory construction, any

11  court, the Secretary, and any sales tax administering au-

12  thority shall consider—

13        "(1) the common law canons of statutory con-

14     struction;

15        "(2) the meaning and construction of concepts

16     and terms used in the Internal Revenue Code of

17     1986 as in effect before the effective date of this

18     subtitle; and

19        "(3) construe any ambiguities in this Act in

20     favor of reserving powers to the States respectively,

21     or to the people.

22  **"SEC. 2. DEFINITIONS.**

23     "(a) IN GENERAL.—For purposes of this subtitle—

24        "(1) AFFILIATED FIRMS.—A firm is affiliated

25     with another if 1 firm owns 50 percent or more of—

11

1           "(A) the voting shares in a corporation, or

2           "(B) the capital interests of a business

3    firm that is not a corporation.

4       "(2) CONFORMING STATE SALES TAX.—The

5    term 'conforming State sales tax' means a sales tax

6    imposed by a State that adopts the same definition

7    of taxable property and services as adopted by this

8    subtitle.

9       "(3) DESIGNATED COMMERCIAL PRIVATE COU-

10    RIER SERVICE.—The term 'designated commercial

11    private courier service' means a firm designated as

12    such by the Secretary or any sales tax administering

13    authority, upon application of the firm, if the firm—

14       "(A) provides its services to the general

15    public,

16       "(B) records electronically to its data base

17    kept in the regular course of its business the

18    date on which an item was given to such firm

19    for delivery, and

20       "(C) has been operating for at least 1

21    year.

22       "(4) EDUCATION AND TRAINING.—The term

23    'education and training' means tuition for primary,

24    secondary, or postsecondary level education, and job-

25    related training courses. Such term does not include

12

1 room, board, sports activities, recreational activities,

2 hobbies, games, arts or crafts or cultural activities.

3  "(5) GROSS PAYMENTS.—The term 'gross pay-

4 ments' means payments for taxable property or serv-

5 ices, including Federal taxes imposed by this title.

6  "(6) INTANGIBLE PROPERTY.—

7   "(A) IN GENERAL.—The term 'intangible

8  property' includes copyrights, trademarks, pat-

9  ents, goodwill, financial instruments, securities,

10  commercial paper, debts, notes and bonds, and

11  other property deemed intangible at common

12  law. The Secretary shall, by regulation resolve

13  differences among the provisions of common

14  law of the several States.

15   "(B) CERTAIN TYPES OF PROPERTY.—

16  Such term does not include tangible personal

17  property (or rents or leaseholds of any term

18  thereon), real property (or rents or leaseholds

19  of any term thereon) and computer software.

20  "(7) PERSON.—The term 'person' means any

21 natural person, and unless the context clearly does

22 not allow it, any corporation, partnership, limited li-

23 ability company, trust, estate, government, agency,

24 administration, organization, association, or other

25 legal entity (foreign or domestic.)

13

1          "(8) PRODUCE, PROVIDE, RENDER, OR SELL

2     TAXABLE PROPERTY OR SERVICES.—

3               "(A) IN GENERAL.—A taxable property or

4          service is used to produce, provide, render, or

5          sell a taxable property or service if such prop-

6          erty or service is purchased by a person en-

7          gaged in a trade or business for the purpose of

8          employing or using such taxable property or

9          service in the production, provision, rendering,

10         or sale of other taxable property or services in

11         the ordinary course of that trade or business.

12              "(B)    RESEARCH,    EXPERIMENTATION,

13         TESTING, AND DEVELOPMENT.—Taxable prop-

14         erty or services used in a trade or business for

15         the purpose of research, experimentation, test-

16         ing, and development shall be treated as used to

17         produce, provide, render, or sell taxable prop-

18         erty or services.

19              "(C)    INSURANCE    PAYMENTS.—Taxable

20         property or services purchased by an insurer on

21         behalf of an insured shall be treated as used to

22         produce, provide, render, or sell taxable prop-

23         erty or services if the premium for the insur-

24         ance contract giving rise to the insurer's obliga-

14

1               tion was subject to tax pursuant to section 801

2               (relating to financial intermediation services).

3                     "(D) EDUCATION AND TRAINING.—Edu-

4               cation and training shall be treated as services

5               used to produce, provide, render, or sell taxable

6               property or services.

7             "(9) REGISTERED SELLER.—The term 'reg-

8     istered seller' means a person registered pursuant to

9     section 502.

10           "(10) SALES TAX ADMINISTERING AUTHOR-

11     ITY.—The term 'sales tax administering authority'

12     means—

13                   "(A) the State agency designated to collect

14               and administer the sales tax imposed by this

15               subtitle, in an administering State, or

16                   "(B) the Secretary, in a State that is nei-

17               ther—

18                       "(i) an administering State, nor

19                       "(ii) a State that has elected to have

20                   its sales tax administered by an admin-

21                   istering State.

22             "(11) SECRETARY.—The term 'Secretary'

23     means the Secretary of the Treasury.

24           "(12) TAXABLE EMPLOYER.—

15

1          "(A) IN GENERAL.—The term 'taxable em-
2     ployer' includes—

3               "(i) any household employing domes-
4          tic servants, and

5               "(ii) any government except for gov-
6          ernment enterprises (as defined in section
7          704).

8          "(B) EXCEPTIONS.—The term 'taxable
9     employer' does not include any employer which
10    is—

11              "(i) engaged in a trade or business,

12              "(ii) a not-for-profit organization (as
13          defined in section 706), or

14              "(iii) a government enterprise (as de-
15          fined in section 704).

16         "(C) CROSS REFERENCE.—For rules relat-
17    ing to collection and remittance of tax on wages
18    by taxable employers, see section 103(b)(2).

19    "(13) TAX INCLUSIVE FAIR MARKET VALUE.—
20    The term 'tax inclusive fair market value' means the
21    fair market value of taxable property or services plus
22    the tax imposed by this subtitle.

23    "(14) TAXABLE PROPERTY OR SERVICE.—

24         "(A) GENERAL RULE.—The term 'taxable
25    property or service' means—

16

1        "(i) any property (including leaseholds

2    of any term or rents with respect to such

3    property) but excluding—

4            "(I) intangible property, and

5            "(II) used property, and

6        "(ii) any service (including any finan-

7    cial intermediation services as determined

8    by section 801).

9        "(B) SERVICE.—For purposes of subpara-

10    graph (A), the term 'service'—

11        "(i) shall include any service per-

12    formed by an employee for which the em-

13    ployee is paid wages or a salary by a tax-

14    able employer, and

15        "(ii) shall not include any service per-

16    formed by an employee for which the em-

17    ployee is paid wages or a salary—

18            "(I) by an employer in the reg-

19        ular course of the employer's trade or

20        business,

21            "(II) by an employer that is a

22        not-for-profit organization (as defined

23        in section 706),

17

1               "(III) by an employer that is a
2           government enterprise (as defined in
3           section 704), and
4               "(IV) by taxable employers to
5           employees directly providing education
6           and training.
7       "(15) UNITED STATES.—The term 'United
8   States', when used in the geographical sense, means
9   each of the 50 states, the District of Columbia, and
10  any commonwealth, territory, or possession of the
11  United States.
12      "(16) USED PROPERTY.—The term 'used prop-
13  erty' means—
14          "(A) property on which the tax imposed by
15      section 101 has been collected and for which no
16      credit has been allowed under section 202, 203,
17      or 205, or
18          "(B) property that was held other than for
19      a business purpose (as defined in section
20      102(b)) on December 31, 2008.
21      "(17) WAGES AND SALARY.—The terms 'wage'
22  and 'salary' mean all compensation paid for employ-
23  ment service including cash compensation, employee
24  benefits, disability insurance, or wage replacement
25  insurance payments, unemployment compensation

18

1    insurance, workers' compensation insurance, and the

2    fair market value of any other consideration paid by

3    an employer to an employee in consideration for em-

4    ployment services rendered.

5    "(b) CROSS REFERENCES.—

6        "(1) For the definition of business purposes,

7    see section 102(b).

8        "(2) For the definition of insurance contract,

9    see section 206(e).

10        "(3) For the definition of qualified family, see

11    section 302.

12        "(4) For the definition of monthly poverty level,

13    see section 303.

14        "(5) For the definition of large seller, see sec-

15    tion 501(e)(3).

16        "(6) For the definition of hobby activities, see

17    section 701.

18        "(7) For the definition of gaming sponsor, see

19    section 701(a).

20        "(8) For the definition of a chance, see section

21    701(b).

22        "(9) For the definition of government enter-

23    prise, see section 704(b).

24        "(10) For the definition of mixed use property,

25    see section 705.

19

1    "(11) For the definition of qualified not-for-
2  profit organization, see section 706.

3    "(12) For the definition of financial intermedi-
4  ation services, see section 801.

## "CHAPTER 1—INTERPRETATION; DEFINITIONS; IMPOSITION OF TAX; ETC.

"Sec. 101. Imposition of sales tax.
"Sec. 102. Intermediate and export sales.
"Sec. 103. Rules relating to collection and remittance of tax.

**"SEC. 101. IMPOSITION OF SALES TAX.**

8  "(a) IN GENERAL.—There is hereby imposed a tax
9 on the use or consumption in the United States of taxable
10 property or services.

11  "(b) RATE.—

12    "(1) FOR 2009.—In the calendar year 2009, the
13  rate of tax is 23 percent of the gross payments for
14  the taxable property or service.

15    "(2) FOR YEARS AFTER 2009.—For years after
16  the calendar year 2009, the rate of tax is the com-
17  bined Federal tax rate percentage (as defined in
18  paragraph (3)) of the gross payments for the taxable
19  property or service.

20    "(3) COMBINED FEDERAL TAX RATE PERCENT-
21  AGE.—The combined Federal tax rate percentage is
22  the sum of—

23      "(A) the general revenue rate (as defined
24    in paragraph (4), and

•HR 25 IH

20

1     "(B) the old-age, survivors and disability

2    insurance rate, and

3     "(C) the hospital insurance rate.

4    "(4) GENERAL REVENUE RATE.—The general

5   revenue rate shall be 14.91 percent.

6   "(c) COORDINATION WITH IMPORT DUTIES.—The

7 tax imposed by this section is in addition to any import

8 duties imposed by chapter 4 of title 19, United States

9 Code. The Secretary shall provide by regulation that, to

10 the maximum extent practicable, the tax imposed by this

11 section on imported taxable property and services is col-

12 lected and administered in conjunction with any applicable

13 import duties imposed by the United States.

14   "(d) LIABILITY FOR TAX.—

15    "(1) IN GENERAL.—The person using or con-

16   suming taxable property or services in the United

17   States is liable for the tax imposed by this section,

18   except as provided in paragraph (2) of this sub-

19   section.

20    "(2) EXCEPTION WHERE TAX PAID TO SELL-

21   ER.—A person using or consuming a taxable prop-

22   erty or service in the United States is not liable for

23   the tax imposed by this section if the person pays

24   the tax to a person selling the taxable property or

21

1    service and receives from such person a purchaser's

2    receipt within the meaning of section 510.

3  **"SEC. 102. INTERMEDIATE AND EXPORT SALES.**

4    "(a) IN GENERAL.—For purposes of this subtitle—

5      "(1) BUSINESS AND EXPORT PURPOSES.—No

6    tax shall be imposed under section 101 on any tax-

7    able property or service purchased for—

8        "(A) a business purpose in a trade or busi-

9      ness, or

10        "(B) export from the United States for use

11      or consumption outside the United States, if,

12      the purchaser provided the seller with a reg-

13      istration certificate, and the seller was a whole-

14      sale seller.

15      "(2) INVESTMENT PURPOSE.—No tax shall be

16    imposed under section 101 on any taxable property

17    or service purchased for an investment purpose and

18    held exclusively for an investment purpose.

19      "(3) STATE GOVERNMENT FUNCTIONS.—No tax

20    shall be imposed under section 101 on State govern-

21    ment functions that do not constitute the final con-

22    sumption of property or services.

23    "(b) BUSINESS PURPOSES.—For purposes of this

24  section, the term 'purchased for a business purpose in a

22

1  trade or business' means purchased by a person engaged

2  in a trade or business and used in that trade or business—

3          "(1) for resale,

4          "(2) to produce, provide, render, or sell taxable

5      property or services, or

6          "(3) in furtherance of other bona fide business

7      purposes.

8  "(c) INVESTMENT PURPOSES.—For purposes of this

9  section, the term 'purchased for an investment purpose'

10  means property purchased exclusively for purposes of ap-

11  preciation or the production of income but not entailing

12  more than minor personal efforts.

13  **"SEC. 103. RULES RELATING TO COLLECTION AND REMIT-**

14              **TANCE OF TAX.**

15  "(a) LIABILITY FOR COLLECTION AND REMITTANCE

16  OF THE TAX.—Except as provided otherwise by this sec-

17  tion, any tax imposed by this subtitle shall be collected

18  and remitted by the seller of taxable property or services

19  (including financial intermediation services).

20  "(b) TAX TO BE REMITTED BY PURCHASER IN CER-

21  TAIN CIRCUMSTANCES.—

22          "(1) IN GENERAL.—In the case of taxable prop-

23      erty or services purchased outside of the United

24      States and imported into the United States for use

23

1    or consumption in the United States, the purchaser

2    shall remit the tax imposed by section 101.

3        "(2) CERTAIN WAGES OR SALARY.—In the case

4    of wages or salary paid by a taxable employer which

5    are taxable services, the employer shall remit the tax

6    imposed by section 101.

7    "(c) CONVERSION OF BUSINESS OR EXPORT PROP-

8    ERTY OR SERVICES.—Property or services purchased for

9    a business purpose in a trade or business or for export

10   (sold untaxed pursuant to section 102(a)) that is subse-

11   quently converted to personal use shall be deemed pur-

12   chased at the time of conversion and shall be subject to

13   the tax imposed by section 101 at the fair market value

14   of the converted property as of the date of conversion. The

15   tax shall be due as if the property had been sold at the

16   fair market value during the month of conversion. The

17   person using or consuming the converted property is liable

18   for and shall remit the tax.

19   "(d) SELLER RELIEVED OF LIABILITY IN CERTAIN

20   CASES.—In the case of any taxable property or service

21   which is sold untaxed pursuant to section 102(a), the sell-

22   er shall be relieved of the duty to collect and remit the

23   tax imposed under section 101 on such purchase if the

24   seller—

24

1        "(1) received in good faith, and retains on file

2       for the period set forth in section 509, a copy of a

3       registration certificate from the purchaser, and

4        "(2) did not, at the time of sale, have reason-

5       able cause to believe that the buyer was not reg-

6       istered pursuant to section 502.

7     "(e) PURCHASER LIABLE TO COLLECT AND REMIT

8 IN CERTAIN CASES.—In the case of any taxable property

9 or service which is sold untaxed pursuant to section 102,

10 if the seller is relieved by reason of subsection (d) of the

11 duty to collect and remit the tax imposed by section 101,

12 then the duty to pay any tax due shall rest with the pur-

13 chaser.

14     "(f) BARTER TRANSACTIONS.—If gross payment for

15 taxable property or services is made in other than money,

16 then the person responsible for collecting and remitting

17 the tax shall remit the tax to the sales tax administering

18 authority in money as if gross payment had been made

19 in money at the tax inclusive fair market value of the tax-

20 able property or services purchased.

21     "(g) INTERCOMPANY SALES.—Firms that make pur-

22 chases from affiliated firms that are untaxed pursuant to

23 section 102, or make sales to affiliated firms that are

24 untaxed pursuant to section 102, shall not need to comply

25

1 with the requirements of subsection (d) (relating to certifi-

2 cates) for said purchases or sales to remain untaxed.

3       **"CHAPTER 2—CREDITS; REFUNDS**

"Sec. 201. Credits and refunds.
"Sec. 202. Business use conversion credit.
"Sec. 203. Intermediate and export sales credit.
"Sec. 204. Administration credit.
"Sec. 205. Bad debt credit.
"Sec. 206. Insurance proceeds credit.
"Sec. 207. Refunds.

4 **"SEC. 201. CREDITS AND REFUNDS.**

5     "(a) IN GENERAL.—Each person shall be allowed a

6 credit with respect to the taxes imposed by section 101

7 for each month in an amount equal to the sum of—

8         "(1) such person's business use conversion

9     credit pursuant to section 202 for such month,

10         "(2) such person's intermediate and export

11     sales credit pursuant to section 203 for such month,

12         "(3) the administration credit pursuant to sec-

13     tion 204 for such month,

14         "(4) the bad debt credit pursuant to section

15     205 for such month,

16         "(5) the insurance proceeds credit pursuant to

17     section 206 for such month,

18         "(6) the transitional inventory credit pursuant

19     to section 902, and

20         "(7) any amount paid in excess of the amount

21     due.

26

1  "(b) CREDITS NOT ADDITIVE.—Only one credit al-

2 lowed by chapter 2 may be taken with respect to any par-

3 ticular gross payment.

**"SEC. 202. BUSINESS USE CONVERSION CREDIT.**

5  "(a) IN GENERAL.—For purposes of section 201, a

6 person's business use conversion credit for any month is

7 the aggregate of the amounts determined under subsection

8 (b) with respect to taxable property and services—

9   "(1) on which tax was imposed by section 101

10   (and actually paid), and

11   "(2) which commenced to be 95 percent or

12   more used during such month for business purposes

13   (within the meaning of section 102(b)).

14  "(b) AMOUNT OF CREDIT.—The amount determined

15 under this paragraph with respect to any taxable property

16 or service is the lesser of—

17   "(1) the product of—

18    "(A) the rate imposed by section 101, and

19    "(B) the quotient that is—

20     "(i) the fair market value of the prop-

21     erty or service when its use is converted,

22     divided by

23     "(ii) the quantity that is 1 minus the

24     tax rate imposed by section 101, or

27

1       "(2) the amount of tax paid with respect to

2      such taxable property or service, including the

3      amount, if any, determined in accordance with sec-

4      tion 705 (relating to mixed use property).

5 **"SEC. 203. INTERMEDIATE AND EXPORT SALES CREDIT.**

6      "For purposes of section 201, a person's intermediate

7 and export sales credit is the amount of sales tax paid

8 on the purchase of any taxable property or service pur-

9 chased for—

10      "(1) a business purpose in a trade or business

11      (as defined in section 102(b)), or

12      "(2) export from the United States for use or

13      consumption outside the United States.

14 **"SEC. 204. ADMINISTRATION CREDIT.**

15      "(a) IN GENERAL.—Every person filing a timely

16 monthly report (with regard to extensions) in compliance

17 with section 501 shall be entitled to a taxpayer adminis-

18 trative credit equal to the greater of—

19      "(1) $200, or

20      "(2) one-quarter of 1 percent of the tax remit-

21      ted.

22      "(b) LIMITATION.—The credit allowed under this sec-

23 tion shall not exceed 20 percent of the tax due to be remit-

24 ted prior to the application of any credit or credits per-

25 mitted by section 201.

28

1  **"SEC. 205. BAD DEBT CREDIT.**

2      "(a) FINANCIAL INTERMEDIATION SERVICES.—Any

3  person who has experienced a bad debt (other than unpaid

4  invoices within the meaning of subsection (b)) shall be en-

5  titled to a credit equal to the product of—

6          "(1) the rate imposed by section 101, and

7          "(2) the quotient that is—

8              "(A) the amount of the bad debt (as de-

9          fined in section 802), divided by

10             "(B) the quantity that is 1 minus the rate

11         imposed by section 101.

12      "(b) UNPAID INVOICES.—Any person electing the ac-

13  crual method pursuant to section 503 that has with re-

14  spect to a transaction—

15          "(1) invoiced the tax imposed by section 101,

16          "(2) remitted the invoiced tax,

17          "(3) actually delivered the taxable property or

18      performed the taxable services invoiced, and

19          "(4) not been paid 180 days after date the in-

20      voice was due to be paid,

21  shall be entitled to a credit equal to the amount of tax

22  remitted and unpaid by the purchaser.

23      "(c) SUBSEQUENT PAYMENT.—Any payment made

24  with respect to a transaction subsequent to a section 205

25  credit being taken with respect to that transaction shall

26  be subject to tax in the month the payment was received

29

1    as if a tax inclusive sale of taxable property and services

2    in the amount of the payment had been made.

3        "(d) PARTIAL PAYMENTS.—Partial payments shall

4    be treated as pro rata payments of the underlying obliga-

5    tion and shall be allocated proportionately—

6            "(1) for fully taxable payments, between pay-

7        ment for the taxable property and service and tax,

8        and

9            "(2) for partially taxable payments, among pay-

10       ment for the taxable property and service, tax and

11       other payment.

12       "(e) RELATED PARTIES.—The credit provided by this

13    section shall not be available with respect to sales made

14    to related parties. For purposes of this section, related

15    party means affiliated firms and family members (as de-

16    fined in section 302(b)).

## "SEC. 206. INSURANCE PROCEEDS CREDIT.

18       "(a) IN GENERAL.—A person receiving a payment

19    from an insurer by virtue of an insurance contract shall

20    be entitled to a credit in an amount determined by sub-

21    section (b), less any amount paid to the insured by the

22    insurer pursuant to subsection (c), if the entire premium

23    (except that portion allocable to the investment account

24    of the underlying policy) for the insurance contract giving

25    rise to the insurer's obligation to make a payment to the

30

1 insured was subject to the tax imposed by section 101 and

2 said tax was paid.

3     "(b) CREDIT AMOUNT.—The amount of the credit

4 shall be the product of—

5         "(1) the rate imposed by section 101, and

6         "(2) the quotient that is—

7             "(A) the amount of the payment made by

8         the insurer to the insured, divided by

9             "(B) the quantity that is 1 minus the rate

10         imposed by section 101.

11     "(c) ADMINISTRATIVE OPTION.—The credit deter-

12 mined in accordance with subsection (b) shall be paid by

13 the insurer to the insured and the insurer shall be entitled

14 to the credit in lieu of the insured, except that the insurer

15 may elect, in a form prescribed by the Secretary, to not

16 pay the credit and require the insured to make application

17 for the credit. In the event of such election, the insurer

18 shall provide to the Secretary and the insured the name

19 and tax identification number of the insurer and of the

20 insured and indicate the proper amount of the credit.

21     "(d) COORDINATION WITH RESPECT TO EXEMP-

22 TION.—If taxable property or services purchased by an in-

23 surer on behalf of an insured are purchased free of tax

24 by virtue of section 2(a)(8)(C), then the credit provided

31

1 by this section shall not be available with respect to that

2 purchase.

3    "(e) INSURANCE CONTRACT.—For purposes of sub-

4 section (a), the term insurance contract' shall include a

5 life insurance contract, a health insurance contract, a

6 property and casualty loss insurance contract, a general

7 liability insurance contract, a marine insurance contract,

8 a fire insurance contract, an accident insurance contract,

9 a disability insurance contract, a long-term care insurance

10 contract, and an insurance contract that provides a com-

11 bination of these types of insurance.

12 **"SEC. 207. REFUNDS.**

13    "(a) REGISTERED SELLERS.—If a registered seller

14 files a monthly tax report with an overpayment, then,

15 upon application by the registered seller in a form pre-

16 scribed by the sales tax administering authority, the over-

17 payment shown on the report shall be refunded to the reg-

18 istered seller within 60 days of receipt of said application.

19 In the absence of such application, the overpayment may

20 be carried forward, without interest, by the person entitled

21 to the credit.

22    "(b) OTHER PERSONS.—If a person other than a reg-

23 istered seller has an overpayment for any month, then,

24 upon application by the person in a form prescribed by

25 the sales tax administering authority, the credit balance

32

1 due shall be refunded to the person within 60 days of re-

2 ceipt of said application.

3    "(c) INTEREST.—No interest shall be paid on any

4 balance due from the sales tax administering authority

5 under this subsection for any month if such balance due

6 is paid within 60 days after the application for refund is

7 received. Balances due not paid within 60 days after the

8 application for refund is received shall bear interest from

9 the date of application. Interest shall be paid at the Fed-

10 eral short-term rate (as defined in section 512).

11    "(d) SUSPENSION OF PERIOD TO PAY REFUND

12 ONLY IF FEDERAL OR STATE COURT RULING.—The 60-

13 day periods under subsections (a) and (b) shall be sus-

14 pended with respect to a purported overpayment (or por-

15 tion thereof) only during any period that there is in effect

16 a preliminary, temporary, or final ruling from a Federal

17 or State court that there is reasonable cause to believe

18 that such overpayment may not actually be due.

19    **"CHAPTER 3—FAMILY CONSUMPTION**

20    **ALLOWANCE**

"Sec. 301. Family consumption allowance.
"Sec. 302. Qualified family.
"Sec. 303. Monthly poverty level.
"Sec. 304. Rebate mechanism.
"Sec. 305. Change in family circumstances.

33

1  **"SEC. 301. FAMILY CONSUMPTION ALLOWANCE.**

2      "Each qualified family shall be eligible to receive a

3  sales tax rebate each month. The sales tax rebate shall

4  be in an amount equal to the product of—

5          "(1) the rate of tax imposed by section 101,

6      and

7          "(2) the monthly poverty level.

8  **"SEC. 302. QUALIFIED FAMILY.**

9      "(a) GENERAL RULE.—For purposes of this chapter,

10  the term 'qualified family' shall mean 1 or more family

11  members sharing a common residence. All family members

12  sharing a common residence shall be considered as part

13  of 1 qualified family.

14      "(b) FAMILY SIZE DETERMINATION.—

15          "(1) IN GENERAL.—To determine the size of a

16      qualified family for purposes of this chapter, family

17      members shall mean—

18              "(A) an individual,

19              "(B) the individual's spouse,

20              "(C) all lineal ancestors and descendants

21          of said individual (and such individual's

22          spouse),

23              "(D) all legally adopted children of such

24          individual (and such individual's spouse), and

25              "(E) all children under legal guardianship

26          of such individual (or such individual's spouse).

34

1       "(2)   IDENTIFICATION   REQUIREMENTS.—In

2 order for a person to be counted as a member of the

3 family for purposes of determining the size of the

4 qualified family, such person must—

5          "(A) have a bona fide Social Security num-

6 ber; and

7          "(B) be a lawful resident of the United

8 States.

9 "(c) CHILDREN LIVING AWAY FROM HOME.—

10       "(1) STUDENTS LIVING AWAY FROM HOME.—

11 Any person who was a registered student during not

12 fewer than 5 months in a calendar year while living

13 away from the common residence of a qualified fam-

14 ily but who receives over 50 percent of such person's

15 support during a calendar year from members of the

16 qualified family shall be included as part of the fam-

17 ily unit whose members provided said support for

18 purposes of this chapter.

19       "(2) CHILDREN OF DIVORCED OR SEPARATED

20 PARENTS.—If a child's parents are divorced or le-

21 gally separated, a child for purposes of this chapter

22 shall be treated as part of the qualified family of the

23 custodial parent. In cases of joint custody, the custo-

24 dial parent for purposes of this chapter shall be the

25 parent that has custody of the child for more than

35

1    one-half of the time during a given calendar year. A

2    parent entitled to be treated as the custodial parent

3    pursuant to this paragraph may release this claim to

4    the other parent if said release is in writing.

5    "(d) ANNUAL REGISTRATION.—In order to receive

6   the family consumption allowance provided by section 301,

7   a qualified family must register with the sales tax admin-

8   istering authority in a form prescribed by the Secretary.

9   The annual registration form shall provide—

10         "(1) the name of each family member who

11     shared the qualified family's residence on the family

12     determination date,

13         "(2) the Social Security number of each family

14     member on the family determination date who

15     shared the qualified family's residence on the family

16     determination date,

17         "(3) the family member or family members to

18     whom the family consumption allowance should be

19     paid,

20         "(4) a certification that all listed family mem-

21     bers are lawful residents of the United States,

22         "(5) a certification that all family members

23     sharing the common residence are listed,

36

1        "(6) a certification that no family members
2    were incarcerated on the family determination date
3    (within the meaning of subsection (l)), and

4        "(7) the address of the qualified family.
5    Said registration shall be signed by all members of the
6    qualified family that have attained the age of 21 years
7    as of the date of filing.

8        "(e) REGISTRATION NOT MANDATORY.—Registra-
9    tion is not mandatory for any qualified family.

10       "(f) EFFECT OF FAILURE TO PROVIDE ANNUAL
11   REGISTRATION.—Any qualified family that fails to reg-
12   ister in accordance with this section within 30 days of the
13   family determination date, shall cease receiving the
14   monthly family consumption allowance in the month be-
15   ginning 90 days after the family determination date.

16       "(g) EFFECT OF CURING FAILURE TO PROVIDE AN-
17   NUAL REGISTRATION.—Any qualified family that failed to
18   timely make its annual registration in accordance with this
19   section but subsequently cures its failure to register, shall
20   be entitled to up to 6 months of lapsed sales tax rebate
21   payments. No interest on lapsed payment amount shall be
22   paid.

23       "(h) EFFECTIVE DATE OF ANNUAL REGISTRA-
24   TIONS.—Annual registrations shall take effect for the

37

1 month beginning 90 days after the family registration
2 date.

3     "(i) EFFECTIVE DATE OF REVISED REGISTRA-
4 TIONS.—A revised registration made pursuant to section
5 305 shall take effect for the first month beginning 60 days
6 after the revised registration was filed. The existing reg-
7 istration shall remain in effect until the effective date of
8 the revised registration.

9     "(j) DETERMINATION OF REGISTRATION FILING
10 DATE.—An annual or revised registration shall be deemed
11 filed when—

12         "(1) deposited in the United States mail, post-
13     age prepaid, to the address of the sales tax admin-
14     istering authority;

15         "(2) delivered and accepted at the offices of the
16     sales tax administering authority; or

17         "(3) provided to a designated commercial pri-
18     vate courier service for delivery within 2 days to the
19     sales tax administering authority at the address of
20     the sales tax administering authority.

21     "(k) PROPOSED REGISTRATION TO BE PROVIDED.—
22 30 or more days before the family registration date, the
23 sales tax administering authority shall mail to the address
24 shown on the most recent rebate registration or change
25 of address notice filed pursuant to section 305(d) a pro-

38

1 posed registration that may be simply signed by the appro-
2 priate family members if family circumstances have not
3 changed.

4     "(l) INCARCERATED INDIVIDUALS.—An individual
5 shall not be eligible under this chapter to be included as
6 a member of any qualified family if that individual—

7         "(1) is incarcerated in a local, State, or Federal
8         jail, prison, mental hospital, or other institution on
9         the family determination date, and

10         "(2) is scheduled to be incarcerated for 6
11         months or more in the 12-month period following
12         the effective date of the annual registration or the
13         revised registration of said qualified family.

14     "(m) FAMILY DETERMINATION DATE.—The family
15 determination date is a date assigned to each family by
16 the Secretary for purposes of determining qualified family
17 size and other information necessary for the administra-
18 tion of this chapter. The Secretary shall promulgate regu-
19 lations regarding the issuance of family determination
20 dates. In the absence of any regulations, the family deter-
21 mination date for all families shall be October 1. The Sec-
22 retary may assign family determination dates for adminis-
23 trative convenience. Permissible means of assigning family
24 determination dates include a method based on the
25 birthdates of family members.

39

1    "(n) CROSS REFERENCE.—For penalty for filing
2 false rebate claim, see section 505(i).

3 **"SEC. 303. MONTHLY POVERTY LEVEL.**

4    "(a) IN GENERAL.—The monthly poverty level for
5 any particular month shall be one-twelfth of the 'annual
6 poverty level.' For purposes of this section the 'annual
7 poverty level' shall be the sum of—

8        "(1) the annual level determined by the Depart-
9    ment of Health and Human Services poverty guide-
10    lines required by sections 652 and 673(2) of the
11    Omnibus Reconciliation Act of 1981 for a particular
12    family size, and

13        "(2) in case of families that include a married
14    couple, the 'annual marriage penalty elimination
15    amount'.

16    "(b) ANNUAL MARRIAGE PENALTY ELIMINATION
17 AMOUNT.—The annual marriage penalty elimination
18 amount shall be the amount that is—

19        "(1) the amount that is two times the annual
20    level determined by the Department of Health and
21    Human Services poverty guidelines required by sec-
22    tions 652 and 673(2) of the Omnibus Reconciliation
23    Act of 1981 for a family of one, less

24        "(2) the annual level determined by the Depart-
25    ment of Health and Human Services poverty guide-

40

1 lines required by sections 652 and 673(2) of the

2 Omnibus Reconciliation Act of 1981 for a family of

3 two.

4 **"SEC. 304. REBATE MECHANISM.**

5 "(a) GENERAL RULE.—The Social Security Adminis-

6 tration shall provide a monthly sales tax rebate to duly

7 registered qualified families in an amount determined in

8 accordance with section 301.

9 "(b) PERSONS RECEIVING REBATE.—The payments

10 shall be made to the persons designated by the qualifying

11 family in the annual or revised registration for each quali-

12 fied family in effect with respect to the month for which

13 payment is being made. Payments may only be made to

14 persons 18 years or older. If more than 1 person is des-

15 ignated in a registration to receive the rebate, then the

16 rebate payment shall be divided evenly between or among

17 those persons designated.

18 "(c) WHEN REBATES MAILED.—Rebates shall be

19 mailed on or before the first business day of the month

20 for which the rebate is being provided.

21 "(d) SMARTCARDS AND DIRECT ELECTRONIC DE-

22 POSIT PERMISSIBLE.—The Social Security Administration

23 may provide rebates in the form of smartcards that carry

24 cash balances in their memory for use in making pur-

41

1 chases at retail establishments or by direct electronic de-

2 posit.

## "SEC. 305. CHANGE IN FAMILY CIRCUMSTANCES.

4     "(a) GENERAL RULE.—In the absence of the filing

5 of a revised registration in accordance with this chapter,

6 the common residence of the qualified family, marital sta-

7 tus and number of persons in a qualified family on the

8 family registration date shall govern determinations re-

9 quired to be made under this chapter for purposes of the

10 following calendar year.

11     "(b) NO DOUBLE COUNTING.—In no event shall any

12 person be considered part of more than 1 qualified family.

13     "(c)   REVISED   REGISTRATION   PERMISSIBLE.—A

14 qualified family may file a revised registration for pur-

15 poses of section 302(d) to reflect a change in family cir-

16 cumstances. A revised registration form shall provide—

17          "(1) the name of each family member who

18     shared the qualified family's residence on the filing

19     date of the revised registration,

20          "(2) the Social Security number of each family

21     member 2 years of age or older who shared the

22     qualified family's residence on the filing date of the

23     revised registration,

42

1    "(3) the family member or family members to
2    whom the family consumption allowance should be
3    paid,

4    "(4) a certification that all listed family mem-
5    bers are lawful residents of the United States,

6    "(5) a certification that all family members
7    sharing the commoner residence are listed,

8    "(6) a certification that no family members
9    were incarcerated on the family determination date
10    (within the meaning of section 302(1)), and

11    "(7) the address of the qualified family.
12    Said revised registration shall be signed by all members
13    of the qualified family that have attained the age of 21
14    years as of the filing date of the revised registration.

15    "(d) CHANGE OF ADDRESS.—A change of address for
16    a qualified family may be filed with the sales tax admin-
17    istering authority at any time and shall not constitute a
18    revised registration.

19    "(e) REVISED REGISTRATION NOT MANDATORY.—
20    Revised registrations reflecting changes in family status
21    are not mandatory.

22    **"CHAPTER 4—FEDERAL AND STATE**
23    **COOPERATIVE TAX ADMINISTRATION**

"Sec. 401. Authority for States to collect tax.
"Sec. 402. Federal administrative support for States.
"Sec. 403. Federal-State tax conferences.
"Sec. 404. Federal administration in certain States.
"Sec. 405. Interstate allocation and destination determination.

43

"Sec. 406. General administrative matters.
"Sec. 407. Jurisdiction.

1 **"SEC. 401 AUTHORITY FOR STATES TO COLLECT TAX.**

2     "(a) IN GENERAL.—The tax imposed by section 101

3 on gross payments for the use or consumption of taxable

4 property or services within a State shall be administered,

5 collected, and remitted to the United States Treasury by

6 such State if the State is an administering State.

7     "(b) ADMINISTERING STATE.—For purposes of this

8 section, the term 'administering State' means any State—

9         "(1) which maintains a sales tax, and

10         "(2) which enters into a cooperative agreement

11     with the Secretary containing reasonable provisions

12     governing the administration by such State of the

13     taxes imposed by the subtitle and the remittance to

14     the United States in a timely manner of taxes col-

15     lected under this chapter.

16     "(c) COOPERATIVE AGREEMENTS.—The agreement

17 under subsection (b)(2) shall include provisions for the ex-

18 peditious transfer of funds, contact officers, dispute reso-

19 lution, information exchange, confidentiality, taxpayer

20 rights, and other matters of importance. The agreement

21 shall not contain extraneous matters.

22     "(d) TIMELY REMITTANCE OF TAX.—

23         "(1) IN GENERAL.—Administering States shall

24     remit and pay over taxes collected under this subtitle

44

1    on behalf of the United States (less the administra-

2    tion fee allowable under paragraph (2)) not later

3    than 5 days after receipt. Interest at 150 percent of

4    the Federal short-term rate shall be paid with re-

5    spect to amounts remitted after the due date.

6        "(2) ADMINISTRATION FEE.—An administering

7    State may retain an administration fee equal to one-

8    quarter of 1 percent of the amounts otherwise re-

9    quired to be remitted to the United States under

10    this chapter by the administering State.

11    "(e) LIMITATION ON ADMINISTRATION OF TAX BY

12  UNITED STATES.—The Secretary may administer the tax

13  imposed by this subtitle in an administering State only

14  if—

15        "(1)(A) such State has failed on a regular basis

16    to timely remit to the United States taxes collected

17    under this chapter on behalf of the United States,

18    or

19        "(B) such State has on a regular basis other-

20    wise materially breached the agreement referred to

21    in subsection (b)(2);

22        "(2) the State has failed to cure such alleged

23    failures and breaches within a reasonable time;

45

1         "(3) the Secretary provides such State with

2 written notice of such alleged failures and breaches;

3 and

4         "(4) a District Court of the United States with-

5 in such State, upon application of the Secretary, has

6 rendered a decision—

7         "(A) making findings of fact that—

8             "(i) such State has failed on a regular

9 basis to timely remit to the United States

10 taxes collected under this chapter on behalf

11 of the United States, or such State has on

12 a regular basis otherwise materially

13 breached the agreement referred to in sub-

14 section (b)(2);

15             "(ii) the Secretary has provided such

16 State with written notice of such alleged

17 failures and breaches; and

18             "(iii) the State has failed to cure such

19 alleged failures and breaches within a rea-

20 sonable time; and

21         "(B) making a determination that it is in

22 the best interest of the citizens of the United

23 States that the administering State's authority

24 to administer the tax imposed by this subtitle

46

1  be revoked and said tax be administered di-

2  rectly by the Secretary.

3  The order of the District Court revoking the author-

4  ity of an Administering State shall contain provi-

5  sions governing the orderly transfer of authority to

6  the Secretary.

7  "(f) REINSTITUTION.—A State that has had its au-

8 thority revoked pursuant to subsection (e) shall not be an

9 administering State for a period of not less than 5 years

10 after the date of the order of revocation. For the first cal-

11 endar year commencing 8 years after the date of the order

12 of revocation, the State shall be regarded without preju-

13 dice as eligible to become an administering State.

14  "(g) THIRD STATE ADMINISTRATION PERMIS-

15 SIBLE.—It shall be permissible for a State to contract with

16 an administering State to administer the State's sales tax

17 for an agreed fee. In this case, the agreement con-

18 templated by subsection (c) shall have both the State and

19 the Federal Government as parties.

20  "(h) INVESTIGATIONS AND AUDITS.—Administering

21 States shall not conduct investigations or audits at facili-

22 ties in other administering States in connection with the

23 tax imposed by section 101 or conforming State sales tax

24 but shall instead cooperate with other administering

47

1 States using the mechanisms established by section 402,

2 by compact or by other agreement.

3 **"SEC. 402. FEDERAL ADMINISTRATIVE SUPPORT FOR**

4 **STATES.**

5     "(a) IN GENERAL.—The Secretary shall administer

6 a program to facilitate information sharing among States.

7     "(b) STATE COMPACTS.—The Secretary shall facili-

8 tate, and may be a party to a compact among States for

9 purposes of facilitating the taxation of interstate pur-

10 chases and for other purposes that may facilitate imple-

11 mentation of this subtitle.

12     "(c) AGREEMENT WITH CONFORMING STATES.—The

13 Secretary is authorized to enter into and shall enter into

14 an agreement among conforming States enabling con-

15 forming States to collect conforming State sales tax on

16 sales made by sellers without a particular conforming

17 State to a destination within that particular conforming

18 State.

19     "(d) SECRETARY'S AUTHORITY.—The Secretary shall

20 have the authority to promulgate regulations, to provide

21 guidelines, to assist States in administering the national

22 sales tax, to provide for uniformity in the administration

23 of the tax and to provide guidance to the public.

48

1 **"SEC. 403. FEDERAL-STATE TAX CONFERENCES.**

2 "Not less than once annually, the Secretary shall host

3 a conference with the sales tax administrators from the

4 various administering States to evaluate the state of the

5 national sales tax system, to address issues of mutual con-

6 cern and to develop and consider legislative, regulatory,

7 and administrative proposals to improve the tax system.

8 **"SEC. 404. FEDERAL ADMINISTRATION IN CERTAIN STATES.**

9 "The Secretary shall administer the tax imposed by

10 this subtitle in any State or other United States jurisdic-

11 tion that—

12       "(1) is not an administering State, or

13       "(2) elected to have another State administer

14     its tax in accordance with section 401(g).

15 **"SEC. 405. INTERSTATE ALLOCATION AND DESTINATION**

16             **DETERMINATION.**

17 "(a) DESTINATION GENERALLY.—The tax imposed

18 by this subtitle is a destination principle tax. This section

19 shall govern for purposes of determining—

20       "(1) whether the destination of taxable property

21     and services is within or without the United States,

22     and

23       "(2) which State or territory within the United

24     States is the destination of taxable property and

25     services.

49

1    "(b) TANGIBLE PERSONAL PROPERTY.—Except as
2 provided in subsection (f) (relating to certain leases), the
3 destination of tangible personal property shall be the State
4 or territory in which the property was first delivered to
5 the purchaser (including agents and authorized represent-
6 atives).

7    "(c) REAL PROPERTY.—The destination of real prop-
8 erty, or rents or leaseholds on real property, shall be the
9 State or territory in which the real property is located.

10    "(d) OTHER PROPERTY.—The destination of any
11 other taxable property shall be the residence of the pur-
12 chaser.

13    "(e) SERVICES.—

14        "(1) GENERAL RULE.—The destination of serv-
15    ices shall be the State or territory in which the use
16    or consumption of the services occurred. Allocation
17    of service invoices relating to more than 1 jurisdic-
18    tion shall be on the basis of time or another method
19    determined by regulation.

20        "(2) TELECOMMUNICATIONS SERVICES.—The
21    destination of telecommunications services shall be
22    the residence of the purchaser. Telecommunications
23    services include telephone, telegraph, beeper, radio,
24    cable television, satellite, and computer on-line or
25    network services.

50

1           "(3) DOMESTIC TRANSPORTATION SERVICES.—

2     For transportation services where all of the final

3     destinations are within the United States, the des-

4     tination of transportation services shall be the final

5     destination of the trip (in the case of round or mul-

6     tiple trip fares, the services amount shall be equally

7     allocated among each final destination).

8           "(4) INTERNATIONAL TRANSPORTATION SERV-

9     ICES.—For transportation services where the final

10    destination or origin of the trip is without the

11    United States, the service amount shall be deemed

12    50 percent attributable to the United States destina-

13    tion or origin.

14          "(5) ELECTRICAL SERVICE.—The destination of

15    electrical services shall be the residence of the pur-

16    chaser.

17    "(f) FINANCIAL INTERMEDIATION SERVICES.—The

18  destination of financial intermediation services shall be the

19  residence of the purchaser.

20    "(g) RENTS PAID FOR THE LEASE OF TANGIBLE

21  PROPERTY.—

22          "(1) GENERAL RULE.—Except as provided in

23    paragraph (2), the destination of rents paid for the

24    lease of tangible property and leaseholds on such

51

1 property shall be where the property is located while

2 in use.

3 "(2) LAND VEHICLES; AIRCRAFT, WATER

4 CRAFT.—The destination of rental and lease pay-

5 ments on land vehicles, aircraft and water craft shall

6 be—

7 "(A) in the case of rentals and leases of a

8 term of 1 month or less, the location where the

9 land vehicle, aircraft, or water craft was origi-

10 nally delivered to the renter or lessee; and

11 "(B) in the case of rentals and leases of a

12 term greater than 1 month, the residence of the

13 renter or lessee.

14 "(h) ALLOCATION RULES.—For purposes of allo-

15 cating revenue—

16 "(1) between or among administering States

17 from taxes imposed by this subtitle or from State

18 sales taxes administered by third-party admin-

19 istering States, or

20 "(2) between or among States imposing con-

21 forming State sales taxes,

22 the revenue shall be allocated to those States that are the

23 destination of the taxable property or service.

24 "(i) FEDERAL OFFICE OF REVENUE ALLOCATION.—

25 The Secretary shall establish an Office of Revenue Alloca-

52

1 tion to arbitrate any claims or disputes among admin-

2 istering States as to the destination of taxable property

3 and services for purposes of allocating revenue between or

4 among the States from taxes imposed by this subtitle. The

5 determination of the Administrator of the Office of Rev-

6 enue Allocation shall be subject to judicial review in any

7 Federal court with competent jurisdiction. The standard

8 of review shall be abuse of discretion.

9 **"SEC. 406. GENERAL ADMINISTRATIVE MATTERS.**

10    "(a) IN GENERAL.—The Secretary and each sales tax

11 administering authority may employ such persons as may

12 be necessary for the administration of this subtitle and

13 may delegate to employees the authority to conduct inter-

14 views, hearings, prescribe rules, promulgate regulations,

15 and perform such other duties as are required by this sub-

16 title.

17    "(b) RESOLUTION OF ANY INCONSISTENT RULES

18 AND REGULATIONS.—In the event that the Secretary and

19 any sales tax administering authority have issued incon-

20 sistent rules or regulations, any lawful rule or regulation

21 issued by the Secretary shall govern.

22    "(c) ADEQUATE NOTICE TO BE PROVIDED.—Except

23 in the case of an emergency declared by the Secretary (and

24 not his designee), no rule or regulation issued by the Sec-

25 retary with respect to any internal revenue law shall take

53

1 effect before 90 days have elapsed after its publication in
2 the Federal Register. Upon issuance, the Secretary shall
3 provide copies of all rules or regulations issued under this
4 title to each sales tax administering authority.

5     "(d) No Rules, Rulings, or Regulations With
6 Retroactive Effect.—No rule, ruling, or regulation
7 issued or promulgated by the Secretary relating to any in-
8 ternal revenue law or by a sales tax administering author-
9 ity shall apply to a period prior to its publication in the
10 Federal Register (or State equivalent) except that a regu-
11 lation may take retroactive effect to prevent abuse.

12     "(e) Review of Impact of Regulations, Rules,
13 and Rulings on Small Business.—

14         "(1) Submission to small business admin-
15         istration.—After publication of any proposed or
16         temporary regulation by the Secretary relating to in-
17         ternal revenue laws, the Secretary shall submit such
18         regulation to the Chief Counsel for Advocacy of the
19         Small Business Administration for comment on the
20         impact of such regulation on small businesses. Not
21         later than the date 30 days after the date of such
22         submission, the Chief Counsel for Advocacy of the
23         Small Business Administration shall submit com-
24         ments on such regulation to the Secretary.

54

1       "(2) CONSIDERATION OF COMMENTS.—In pre-
2   scribing any final regulation which supersedes a pro-
3   posed or temporary regulation which had been sub-
4   mitted under this subsection to the Chief Counsel
5   for Advocacy of the Small Business Administration,
6   the Secretary shall—

7           "(A) consider the comments of the Chief
8       Counsel for Advocacy of the Small Business
9       Administration on such proposed or temporary
10      regulation, and

11          "(B) in promulgating such final regulation,
12      include a narrative that describes the response
13      to such comments.

14      "(3) SUBMISSION OF CERTAIN FINAL REGULA-
15  TION.—In the case of promulgation by the Secretary
16  of any final regulations (other than a temporary reg-
17  ulation) which do not supersede a proposed regula-
18  tion, the requirements of paragraphs (1) and (2)
19  shall apply, except that the submission under para-
20  graph (1) shall be made at least 30 days before the
21  date of such promulgation, and the consideration
22  and discussion required under paragraph (2) shall
23  be made in connection with the promulgation of such
24  final regulation.

55

1    "(f) SMALL BUSINESS REGULATORY SAFEGUARDS.—

2    The Small Business Regulatory Enforcement Fairness Act

3    (Public Law 104–121; 110 Stat. 857 ('SBREFA')) and

4    the Regulatory Flexibility Act (5 U.S.C. 601–612

5    ('RFA')) shall apply to regulations promulgated under this

6    subtitle.

7    **"SEC. 407. JURISDICTION.**

8    "(a) STATE JURISDICTION.—A sales tax admin-

9    istering authority shall have jurisdiction over any gross

10   payments made which have a destination (as determined

11   in accordance with section 405) within the State of said

12   sales tax administering authority. This grant of jurisdic-

13   tion is not exclusive of any other jurisdiction that such

14   sales tax administering authority may have.

15   "(b) FEDERAL JURISDICTION.—The grant of juris-

16   diction in subsection (a) shall not be in derogation of Fed-

17   eral jurisdiction over the same matter. The Federal Gov-

18   ernment shall have the right to exercise preemptive juris-

19   diction over matters relating to the taxes imposed by this

20   subtitle.

21   **"CHAPTER 5—OTHER ADMINISTRATIVE**

22   **PROVISIONS**

"Sec. 501. Monthly reports and payments.
"Sec. 502. Registration.
"Sec. 503. Accounting.
"Sec. 504. Registration certificates.
"Sec. 505. Penalties.
"Sec. 506. Burden of persuasion and burden of production.
"Sec. 507. Attorneys' and accountancy fees.

56

"Sec. 508. Summons, examinations, audits, etc.
"Sec. 509. Records.
"Sec. 510. Tax to be separately stated and charged.
"Sec. 511. Coordination with title 11.
"Sec. 512. Applicable interest rate.

1 **"SEC. 501. MONTHLY REPORTS AND PAYMENTS.**

2     "(a) TAX REPORTS AND FILING DATES.—

3         "(1) IN GENERAL.—On or before the 15th day

4     of each month, each person who is—

5             "(A) liable to collect and remit the tax im-

6         posed by this subtitle by reason of section

7         103(a), or

8             "(B) liable to pay tax imposed by this sub-

9         title which is not collected pursuant to section

10         103(a),

11     shall submit to the appropriate sales tax admin-

12     istering authority (in a form prescribed by the Sec-

13     retary) a report relating to the previous calendar

14     month.

15         "(2) CONTENTS OF REPORT.—The report re-

16     quired under paragraph (1) shall set forth—

17             "(A) the gross payments referred to in sec-

18         tion 101,

19             "(B) the tax collected under chapter 4 in

20         connection with such payments,

21             "(C) the amount and type of any credit

22         claimed, and

57

1           "(D) other information reasonably required

2       by the Secretary or the sales tax administering

3       authority for the administration, collection, and

4       remittance of the tax imposed by this subtitle.

5   "(b) TAX PAYMENTS DATE.—

6       "(1) GENERAL RULE.—The tax imposed by this

7   subtitle during any calendar month is due and shall

8   be paid to the appropriate sales tax administering

9   authority on or before the 15th day of the suc-

10  ceeding month. Both Federal tax imposed by this

11  subtitle and confirming State sales tax (if any) shall

12  be paid in 1 aggregate payment.

13      "(2) CROSS REFERENCE.—See subsection (e)

14  relating to remitting of separate segregated funds

15  for sellers that are not small sellers.

16  "(c) EXTENSIONS FOR FILING REPORTS.—

17      "(1) AUTOMATIC EXTENSIONS FOR NOT MORE

18  THAN 30 DAYS.—On application, an extension of not

19  more than 30 days to file reports under subsection

20  (a) shall be automatically granted.

21      "(2) OTHER EXTENSIONS.—On application, ex-

22  tensions of 30 to 60 days to file such reports shall

23  be liberally granted by the sales tax administering

24  authority for reasonable cause. Extensions greater

58

1   than 60 days may be granted by the sales tax ad-
2   ministering authority to avoid hardship.

3       "(3) No Extension for Payment of
4   Taxes.—Notwithstanding paragraphs (1) and (2),
5   no extension shall be granted with respect to the
6   time for paying or remitting the taxes under this
7   subtitle.

8   "(d) Telephone Reporting of Violations.—The
9   Secretary shall establish a system under which a violation
10  of this subtitle can be brought to the attention of the sales
11  tax administering authority for investigation through the
12  use of a toll-free telephone number and otherwise.

13  "(e) Separate Segregated Accounts.—

14      "(1) In general.—Any registered seller that
15  is not a small seller shall deposit all sales taxes col-
16  lected pursuant to section 103 in a particular week
17  in a separate segregated account maintained at a
18  bank or other financial institution within 3 business
19  days of the end of such week. Said registered seller
20  shall also maintain in that account sufficient funds
21  to meet the bank or financial institution minimum
22  balance requirements, if any, and to pay account
23  fees and costs.

24      "(2) Small seller.—For purposes of this
25  subsection, a small seller is any person that has not

59

1    collected $20,000 or more of the taxes imposed by

2    this subtitle in any of the previous 12 months.

3        "(3) LARGE SELLERS.—Any seller that has col-

4    lected $100,000 or more of the taxes imposed by

5    this subtitle in any of the previous 12 months is a

6    large seller. A large seller shall remit to the sales tax

7    administering authority the entire balance of depos-

8    ited taxes in its separate segregated account on the

9    first business day following the end of the calendar

10   week. The Secretary may by regulation require the

11   electronic transfer of funds due from large sellers.

12       "(4) WEEK.—For purposes of this subsection,

13   the term 'week' shall mean the 7-day period ending

14   on a Friday.

15   "(f) DETERMINATION OF REPORT FILING DATE.—

16   A report filed pursuant to subsection (a) shall be deemed

17   filed when—

18       "(1) deposited in the United States mail, post-

19   age prepaid, addressed to the sales tax administering

20   authority,

21       "(2) delivered and accepted at the offices of the

22   sales tax administering authority,

23       "(3) provided to a designated commercial pri-

24   vate courier service for delivery within 2 days to the

60

1    sales tax administering authority at the address of

2    the sales tax administering authority, or

3        "(4) by other means permitted by the Sec-

4    retary.

5    "(g) SECURITY REQUIREMENTS.—A large seller

6 (within the meaning of subsection (e)(3)) shall be required

7 to provide security in an amount equal to the greater of

8 $100,000 or one and one-half times the seller's average

9 monthly tax liability during the previous 6 calendar

10 months. Security may be a cash bond, a bond from a sur-

11 ety company approved by the Secretary, a certificate of

12 deposit, or a State or United States Treasury bond. A

13 bond qualifying under this subsection must be a con-

14 tinuing instrument for each calendar year (or portion

15 thereof) that the bond is in effect. The bond must remain

16 in effect until the surety or sureties are released and dis-

17 charged. Failure to provide security in accordance with

18 this section shall result in revocation of the seller's section

19 502 registration. If a person who has provided security

20 pursuant to this subsection—

21        "(1) fails to pay an amount indicated in a final

22    notice of amount due under this subtitle (within the

23    meaning of section 605(d)),

24        "(2) no Taxpayer Assistance Order is in effect

25    relating to the amount due,

61

1        "(3) either the time for filing an appeal pursu-

2     ant to section 604 has passed or the appeal was de-

3     nied, and

4        "(4) the amount due is not being litigated in

5     any judicial forum,

6 then the security or part of the security, as the case may

7 be, may be forfeited in favor of the Secretary to the extent

8 of such tax due (plus interest if any).

9     "(h) REWARDS PROGRAM.—The Secretary is author-

10 ized to maintain a program of awards wherein individuals

11 that assist the Secretary or sales tax administering au-

12 thorities in discovering or prosecuting tax fraud may be

13 remunerated.

14     "(i) CROSS REFERENCE.—For interest due on taxes

15 remitted late, see section 6601.

16 **"SEC. 502. REGISTRATION.**

17     "(a) IN GENERAL.—Any person liable to collect and

18 remit taxes pursuant to section 103(a) who is engaged in

19 a trade or business shall register as a seller with the sales

20 tax administering authority administering the taxes im-

21 posed by this subtitle.

22     "(b) AFFILIATED FIRMS.—Affiliated firms shall be

23 treated as 1 person for purposes of this section. Affiliated

24 firms may elect, upon giving notice to the Secretary in

62

1 a form prescribed by the Secretary, to treat separate firms

2 as separate persons for purposes of this subtitle.

3     "(c) DESIGNATION OF TAX MATTERS PERSON.—

4 Every person registered pursuant to subsection (a) shall

5 designate a tax matters person who shall be an individual

6 whom the sales tax administering authority may contact

7 regarding tax matters. Each person registered must pro-

8 vide notice of a change in the identity of the tax matters

9 person within 30 days of said change.

10     "(d) CERTIFICATES OF REGISTRATION.—The sales

11 tax administering authority shall provide certificates of

12 registration to registered sellers.

13     "(e) EFFECT OF FAILURE TO REGISTER.—Any per-

14 son that is required to register and who fails to do so is

15 prohibited from selling taxable property or services. The

16 Secretary or a sales tax administering authority may bring

17 an action seeking a temporary restraining order, an in-

18 junction, or such other order as may be appropriate to

19 enforce this section.

20 **"SEC. 503. ACCOUNTING.**

21     "(a) CASH METHOD TO BE USED GENERALLY.—

22 Registered sellers and other persons shall report trans-

23 actions using the cash method of accounting unless an

24 election to use the accrual method of accounting is made

25 pursuant to subsection (b).

63

1    "(b) ELECTION TO USE ACCRUAL METHOD.—A per-
2    son may elect with respect to a calender year to remit
3    taxes and report transactions with respect to the month
4    where a sale was invoiced and accrued.

5    "(c) CROSS REFERENCE.—See section 205 for rules
6    relating to bad debts for sellers electing the accrual meth-
7    od

**8    "SEC. 504. REGISTRATION CERTIFICATES.**

9    "The sales tax administering authority shall issue
10   certificates of registration to registered sellers and such
11   other certificates as are necessary or may prove useful in
12   the administration of the taxes imposed by this subtitle.

**13   "SEC. 505. PENALTIES.**

14   "(a) FAILURE TO REGISTER.—Each person who is
15   required to register pursuant to section 502 but fails to
16   do so prior to notification by the sales tax administering
17   authority shall be liable for a penalty of $500.

18   "(b) RECKLESS OR WILLFUL FAILURE TO COLLECT
19   TAX.—

20      "(1) CIVIL PENALTY; FRAUD.—Each person
21      who is required to and recklessly or willfully fails to
22      collect taxes imposed by this subtitle shall be liable
23      for a penalty equal to the greater of $500 or 20 per-
24      cent of tax not collected.

64

1   "(2) CRIMINAL PENALTY.—Each person who is
2 required to and willfully fails as part of a trade or
3 business to collect taxes imposed by this subtitle
4 may be fined an amount up to the amount deter-
5 mined in accordance with paragraph (1) or impris-
6 oned for a period of not more than 1 year or both.
7   "(c) RECKLESS OR WILLFUL ASSERTION OF INVALID
8 EXEMPTION.—

9   "(1) CIVIL PENALTY; FRAUD.—Each person
10 who recklessly or willfully asserts an invalid inter-
11 mediate or export sales exemption from the taxes
12 imposed by this subtitle shall be liable for a penalty
13 equal to the greater of $500 or 20 percent of the tax
14 not collected or remitted.

15   "(2) CRIMINAL PENALTY.—Each person who
16 willfully asserts an invalid intermediate or export
17 sales exemption from the taxes imposed by this sub-
18 title may be fined an amount up to the amount de-
19 termined in accordance with paragraph (1) or im-
20 prisoned for a period of not more than 1 year or
21 both.

22  "(d) RECKLESS OR WILLFUL FAILURE TO REMIT
23 TAX COLLECTED.—

24   "(1) CIVIL PENALTY; FRAUD.—Each person
25 who is required to and recklessly or willfully fails to

65

1 remit taxes imposed by this subtitle and collected

2 from purchasers shall be liable for a penalty equal

3 to the greater of $1,000 or 50 percent of the tax not

4 remitted.

5  "(2) CRIMINAL PENALTY.—Each person who

6 willfully fails to remit taxes imposed by this subtitle

7 and collected from purchasers may be fined an

8 amount up to the amount determined in accordance

9 with paragraph (1) or imprisoned for a period of not

10 more than 2 years or both.

11 "(e) RECKLESS OR WILLFUL FAILURE TO PAY

12 TAX.—Each person who is required to and recklessly or

13 willfully fails to pay taxes imposed by this subtitle shall

14 be liable for a penalty equal to the greater of $500 or

15 20 percent of the tax not paid.

16 "(f) PENALTY FOR LATE FILING.—

17  "(1) IN GENERAL.—In the case of a failure by

18 any person who is required to and fails to file a re-

19 port required by section 501 on or before the due

20 date (determined with regard to any extension) for

21 such report, such person shall pay a penalty for each

22 month or fraction thereof that said report is late

23 equal to the greater of—

24  "(A) $50, or

66

1         "(B) 0.5 percent of the gross payments re-

2      quired to be shown on the report.

3        "(2) INCREASED PENALTY ON RETURNS FILED

4   AFTER WRITTEN INQUIRY.—The amount of the pen-

5   alty under paragraph (1) shall be doubled with re-

6   spect to any report filed after a written inquiry with

7   respect to such report is received by the taxpayer

8   from the sales tax administering authority.

9       "(3) LIMITATION.—The penalty imposed under

10  this subsection shall not exceed 12 percent.

11       "(4) EXCEPTIONS.—

12         "(A) REASONABLE CAUSE.—No penalty

13       shall be imposed under this subsection with re-

14       spect to any failure if it is shown that such fail-

15       ure is due to reasonable cause.

16         "(B) OTHER WAIVER AUTHORITY.—In ad-

17       dition to penalties not imposed by reason of

18       subparagraph (A), the sales tax administering

19       authority, on application, shall waive the pen-

20       alty imposed by paragraph (1) once per reg-

21       istered person per 24-month period. The pre-

22       ceding sentence shall not apply to a penalty de-

23       termined under paragraph (2).

24     "(g) PENALTY FOR WILLFULLY OR RECKLESSLY AC-

25  CEPTING A FALSE INTERMEDIATE OR EXPORT SALES

67

1  CERTIFICATE.—A person who willingly or recklessly ac-
2  cepts a false intermediate or export sales certificate shall
3  pay a penalty equal to 20 percent of the tax not collected
4  by reason of said acceptance.

5      "(h) PENALTY FOR LATE REMITTANCE OF TAXES.—

6          "(1) IN GENERAL.—A person who is required
7      to timely remit taxes imposed by this subtitle and
8      remits taxes more than 1 month after such taxes are
9      due shall pay a penalty equal to 1 percent per month
10     (or fraction thereof) from the due date.

11         "(2) LIMITATION.—The penalty imposed under
12     this subsection shall not exceed 24 percent.

13         "(3) EXCEPTIONS FOR REASONABLE CAUSE.—
14     No penalty shall be imposed under paragraph (1)
15     with respect to any late remittance if it is shown
16     that such late remittance is due to reasonable cause.

17     "(i) PENALTY FOR FILING FALSE REBATE CLAIM.—

18         "(1) CIVIL PENALTY; FRAUD.—A person who
19     willingly or recklessly files a false claim for a family
20     consumption allowance rebate (within the meaning
21     of chapter 3) shall—

22             "(A) pay a penalty equal to the greater of
23         $500 or 50 percent of the claimed annual re-
24         bate amount not actually due, and

68

1          "(B) repay any rebates received as a result

2      of the false rebate claim (together with inter-

3      est).

4          "(2) CRIMINAL PENALTY.—A person who will-

5      ingly files a false claim for a family consumption al-

6      lowance rebate (within the meaning of chapter 3)

7      may be fined an amount up to the amount deter-

8      mined in accordance with paragraph (1) or impris-

9      oned for a period not more than 1 year or both.

10   "(j) PENALTY FOR BAD CHECK.—If any check or

11 money order in payment of any amount receivable under

12 this subtitle is not duly paid, in addition to other penalties

13 provided by law, the person who tendered such check shall

14 pay a penalty equal to the greater of—

15          "(1) $25, or

16          "(2) two percent of the amount of such check.

17   "(k) PENALTY FOR FAILURE TO MAINTAIN A SEPA-

18 RATE SEGREGATED ACCOUNT.—Any person required to

19 maintain a separate segregated account pursuant to sec-

20 tion 501(e) that fails to maintain such a separate seg-

21 regated account shall pay a penalty of $1,000.

22   "(l) PENALTY FOR FAILURE TO DEPOSIT COL-

23 LECTED TAXES IN A SEPARATE SEGREGATED AC-

24 COUNT.—Any person required to deposit collected taxes

25 into a separate segregated account maintained pursuant

69

1  to section 501(e) that fails to timely deposit said taxes

2  into the separate segregated account shall pay a penalty

3  equal to 1 percent of the amount required to be deposited.

4  The penalty imposed by the previous sentence shall be tri-

5  pled unless said taxes have been deposited in the separate

6  segregated account or remitted to the sales tax admin-

7  istering authority within 16 days of the date said deposit

8  was due.

9      "(m) JOINT AND SEVERAL LIABILITY FOR TAX MAT-

10  TERS PERSON AND RESPONSIBLE OFFICERS.—The tax

11  matters person (designated pursuant to section 502(c))

12  and responsible officers or partners of a firm shall be

13  jointly and severally liable for the tax imposed by this sub-

14  title and penalties imposed by this subtitle.

15      "(n) RIGHT OF CONTRIBUTION.—If more than 1 per-

16  son is liable with respect to any tax or penalty imposed

17  by this subtitle, each person who paid such tax or penalty

18  shall be entitled to recover from other persons who are

19  liable for such tax or penalty an amount equal to the ex-

20  cess of the amount paid by such person over such person's

21  proportionate share of the tax or penalty.

22      "(o) CIVIL PENALTIES AND CRIMINAL FINES NOT

23  EXCLUSIVE.—

70

1    "(1) CIVIL PENALTY.—The fact that a civil
2    penalty has been imposed shall not prevent the im-
3    position of a criminal fine.

4    "(2) CRIMINAL FINE.—The fact that a criminal
5    fine has been imposed shall not prevent the imposi-
6    tion of a civil penalty.

7    "(p) CONFIDENTIALITY.—Any person who violates
8    the requirements relating to confidentiality of tax informa-
9    tion (as provided in section 605(e)) may be fined up to
10    $10,000 or imprisoned for a period of not more than 1
11    year, or both.

12    "(q) CROSS REFERENCE.—For interest due on late
13    payments, see section 6601.

14    **"SEC. 506. BURDEN OF PERSUASION AND BURDEN OF PRO-**
15    **DUCTION.**

16    "In all disputes concerning taxes imposed by this sub-
17    title, the person engaged in a dispute with the sales tax
18    administering authority or the Secretary, as the case may
19    be, shall have the burden of production of documents and
20    records but the sales tax administering authority or the
21    Secretary shall have the burden of persuasion. In all dis-
22    putes concerning an exemption claimed by a purchaser,
23    if the seller has on file an intermediate sale or export sale
24    certificate from the purchaser and did not have reasonable
25    cause to believe that the certificate was improperly pro-

71

1 vided by the purchaser with respect to such purchase
2 (within the meaning of section 103), then the burden of
3 production of documents and records relating to that ex-
4 emption shall rest with the purchaser and not with the
5 seller.

**"SEC. 507. ATTORNEYS' AND ACCOUNTANCY FEES.**

7 "In all disputes concerning taxes imposed by this sub-
8 title, the person engaged in a dispute with the sales tax
9 administering authority or the Secretary, as the case may
10 be, shall be entitled to reasonable attorneys' fees, account-
11 ancy fees, and other reasonable professional fees incurred
12 in direct relation to the dispute unless the sales tax admin-
13 istering authority or the Secretary establishes that its po-
14 sition was substantially justified.

**"SEC. 508. SUMMONS, EXAMINATIONS, AUDITS, ETC.**

16 "(a) SUMMONS.—Persons are subject to administra-
17 tive summons by the sales tax administering authority for
18 records, documents, and testimony required by the sales
19 tax administering authority to accurately determine liabil-
20 ity for tax under this subtitle. A summons shall be served
21 by the sales tax administering authority by an attested
22 copy delivered in hand to the person to whom it is directed
23 or left at his last known address. The summons shall de-
24 scribe with reasonable certainty what is sought.

72

1     "(b) EXAMINATIONS AND AUDITS.—The sales tax ad-

2 ministering authority has the authority to conduct at a

3 reasonable time and place examinations and audits of per-

4 sons who are or may be liable to collect and remit tax

5 imposed by this subtitle and to examine the books, papers,

6 records, or other data of such persons which may be rel-

7 evant or material to the determination of tax due.

8     "(c) LIMITATION ON AUTHORITY IN CASE OF REFER-

9 RAL.—No administrative summons may be issued by the

10 sales tax administering authority and no action be com-

11 menced to enforce an administrative summons with re-

12 spect to any person if a Justice Department referral or

13 referral to a State Attorney General's Office is in effect

14 with respect to such person relating to a tax imposed by

15 this subtitle. Such referral is in effect with respect to any

16 person if the sales tax administering authority or the Sec-

17 retary has recommended to the Justice Department or a

18 State Attorney General's Office a grand jury investigation

19 of such person or a criminal prosecution of such person

20 that contemplates criminal sanctions under this title. A

21 referral shall be terminated when—

22     "(1) the Justice Department or a State Attor-

23     ney General's Office notifies the sales tax admin-

24     istering authority or the Secretary that he will not—

73

1          "(A) prosecute such person for any offense

2      connected with the internal revenue laws,

3          "(B) authorize a grand jury investigation

4      of such person with respect to such offense, or

5              "(C) continue such a grand jury investiga-

6      tion, or

7          "(2) a final disposition has been made of any

8      criminal proceeding connected with the internal rev-

9      enue laws, or conforming State sales tax, against

10     such person.

## "SEC. 509. RECORDS.

12     "Any person liable to remit taxes pursuant to this

13 subtitle shall keep records (including a record of all section

14 510 receipts provided, complete records of intermediate

15 and export sales, including purchaser's intermediate and

16 export sales certificates and tax number and the net of

17 tax amount of purchase) sufficient to determine the

18 amounts reported, collected, and remitted for a period of

19 6 years after the latter of the filing of the report for which

20 the records formed the basis or when the report was due

21 to be filed. Any purchaser who purchased taxable property

22 or services but did not pay tax by reason of asserting an

23 intermediate and export sales exemption shall keep records

24 sufficient to determine whether said exemption was valid

74

1 for a period of 7 years after the purchase of taxable prop-

2 erty or services.

**"SEC. 510. TAX TO BE SEPARATELY STATED AND CHARGED.**

4 "(a) IN GENERAL.—For each purchase of taxable

5 property or services for which a tax is imposed by section

6 101, the seller shall charge the tax imposed by section 101

7 separately from the purchase. For purchase of taxable

8 property or services for which a tax is imposed by section

9 101, the seller shall provide to the purchaser a receipt for

10 each transaction that includes—

11        "(1) the property or services price exclusive of

12    tax;

13        "(2) the amount of tax paid;

14        "(3) the property or service price inclusive of

15    tax;

16        "(4) the tax rate (the amount of tax paid (per

17    paragraph (2)) divided by the property or service

18    price inclusive of tax (per paragraph (3));

19        "(5) the date that the good or service was sold;

20        "(6) the name of the vendor; and

21        "(7) the vendor registration number.

22 "(b) VENDING MACHINE EXCEPTION.—The require-

23 ments of subsection (a) shall be inapplicable in the case

24 of sales by vending machines. Vending machines for pur-

25 poses of this subsection are machines—

75

1        ''(1) that dispense taxable property in exchange

2     for coins or currency; and

3        ''(2) that sell no single item exceeding $10 per

4     unit in price.

5     ''(c) FINANCIAL INTERMEDIATION SERVICES EXCEP-

6  TION.—The requirements of subsection (a) shall be inap-

7  plicable in the case of sales financial intermediation serv-

8  ice. Receipts shall be issued when the tax is imposed (in

9  accordance with section 803 (relating to timing of tax on

10  financial intermediation services)).

11  **''SEC. 511. COORDINATION WITH TITLE 11.**

12     ''No addition to tax shall be made under section 505

13  with respect to a period during which a case is pending

14  under title 11, United States Code—

15        ''(1) if such tax was incurred by the estate and

16     the failure occurred pursuant to an order of the

17     court finding probable insufficiency of funds of the

18     estate to pay administrative expenses; or

19        ''(2) if—

20           ''(A) such tax was incurred by the debtor

21        before the earlier of the order for relief or (in

22        the involuntary case) the appointment of a

23        trustee; and

24           ''(B) the petition was filed before the due

25        date prescribed by law (including extensions)

76

1           for filing a return of such tax, or the date for

2           making the addition to tax occurs on or after

3           the date the petition was filed.

4 **"SEC. 512. APPLICABLE INTEREST RATE.**

5    "(a) IN GENERAL.—

6        "(1) FEDERAL SHORT-TERM RATE.—In the

7    case of a debt instrument, investment, financing

8    lease, or account with a term of not over 3 years,

9    the applicable interest rate is the Federal short-term

10    rate.

11        "(2) FEDERAL MID-TERM RATE.—In the case

12    of a debt instrument, investment, financing lease, or

13    account with a term of over 3 years but not over 9

14    years, the applicable interest rate is the Federal

15    mid-term rate.

16        "(3) FEDERAL LONG-TERM RATE.—In the case

17    of a debt instrument, investment, financing lease, or

18    account with a term of over 9 years, the applicable

19    interest rate is the Federal long-term rate.

20    "(b) FEDERAL SHORT-TERM RATE.—The Federal

21 short-term rate shall be the rate determined by the Sec-

22 retary based on the average market yield (selected by the

23 Secretary and ending in the calendar month in which the

24 determination is made during any one month) on out-

77

1 standing marketable obligations of the United States with
2 remaining periods to maturity of 3 years or fewer.

3     "(c) FEDERAL MID-TERM RATE.—The Federal mid-
4 term rate shall be the rate determined by the Secretary
5 based on the average market yield (selected by the Sec-
6 retary and ending in the calendar month in which the de-
7 termination is made during any 1 month) on outstanding
8 marketable obligations of the United States with remain-
9 ing periods to maturity of more than 3 years and not over
10 9 years.

11     "(d) FEDERAL LONG-TERM RATE.—The Federal
12 long-term rate shall be the rate determined by the Sec-
13 retary based on the average market yield (selected by the
14 Secretary and ending in the calendar month in which the
15 determination is made during any 1 month) on out-
16 standing marketable obligations of the United States with
17 remaining periods to maturity of over 9 years.

18     "(e) DETERMINATION OF RATES.—During each cal-
19 endar month, the Secretary shall determine the Federal
20 short-term rate, the Federal mid-term rate and the Fed-
21 eral long-term rate which shall apply during the following
22 calendar month.

## 23 "CHAPTER 6—COLLECTIONS; APPEALS;
## 24     TAXPAYER RIGHTS

"Sec. 601. Collections.
"Sec. 602. Power to levy, etc.
"Sec. 603. Problem resolution offices.

78

"Sec. 604. Appeals.
"Sec. 605. Taxpayer rights.
"Sec. 606. Installment agreements compromises.

1 **"SEC. 601. COLLECTIONS.**

2      "The sales tax administering authority shall collect

3 the taxes imposed by this subtitle, except as provided in

4 section 404 (relating to Federal administration in certain

5 States).

6 **"SEC. 602. POWER TO LEVY, ETC.**

7      "(a) IN GENERAL.—The sales tax administering au-

8 thority may levy and seize property, garnish wages or sal-

9 ary and file liens to collect amounts due under this sub-

10 title, pursuant to enforcement of—

11          "(1) a judgment duly rendered by a court of

12      law;

13          "(2) an amount due if the taxpayer has failed

14      to exercise his appeals rights under section 604; or

15          "(3) an amount due if the appeals process de-

16      termined that an amount remained due and the tax-

17      payer has failed to timely petition the Tax Court for

18      relief.

19      "(b) EXEMPTION FROM LEVY, SEIZURE, AND GAR-

20 NISHMENTS.—There shall be exempt from levy, seizure,

21 and garnishment or penalty in connection with any tax

22 imposed by this subtitle—

23          "(1) wearing apparel, school books, fuel, provi-

24      sions, furniture, personal effects, tools of a trade or

79

1 profession, livestock in a household up to an aggre-

2 gate value of $15,000; and

3  "(2) monthly money income equal to 150 per-

4 cent of the monthly poverty level (as defined in sec-

5 tion 303).

6 "(c) LIENS TO BE TIMELY RELEASED.—Subject to

7 such reasonable regulations as the Secretary may provide,

8 any lien imposed with respect to a tax imposed by this

9 title shall be released not later than 30 days after—

10  "(1) the liability was satisfied or became unen-

11 forceable; or

12  "(2) a bond was accepted as security.

13 **"SEC. 603. PROBLEM RESOLUTION OFFICES.**

14 "(a) PROBLEM RESOLUTION OFFICE TO BE ESTAB-

15 LISHED.—Each sales tax administering authority shall es-

16 tablish an independent Problem Resolution Office and ap-

17 point an adequate number of problem resolution officers.

18 The head of the problem resolution office must be ap-

19 pointed by, and serve at the pleasure of either the State

20 Governor (in the case of an administering State) or the

21 President of the United States.

22 "(b) AUTHORITY OF PROBLEM RESOLUTION OFFI-

23 CERS.—Problem resolution officers shall have the author-

24 ity to investigate complaints and issue a Taxpayer Assist-

25 ance Order to administratively enjoin any collection activ-

80

1   ity if, in the opinion of the problem resolution officer, said
2   collection activity is reasonably likely to not be in compli-
3   ance with law or to prevent hardship (other than by reason
4   of having to pay taxes lawfully due). Problem resolution
5   officers shall also have the authority to issue Taxpayer As-
6   sistance Orders releasing or returning property that has
7   been levied upon or seized, ordering that a lien be released
8   and that garnished wages be returned. A Taxpayer Assist-
9   ance Order may only be rescinded or modified by the prob-
10  lem resolution officer that issued it, by the highest official
11  in the relevant sales tax administering authority or by its
12  general counsel upon a finding that the collection activity
13  is justified by clear and convincing evidence. The authority
14  to reverse this Taxpayer Assistance Order may not be del-
15  egated.

16      "(c) FORM OF REQUEST FOR TAXPAYER ASSISTANCE
17  ORDER.—The Secretary shall establish a form and proce-
18  dure to aid persons requesting the assistance of the Prob-
19  lem Resolution Office and to aid the Problem Resolution
20  Office in understanding the needs of the person seeking
21  assistance. The use of this form, however, shall not be a
22  prerequisite to a problem resolution officer taking action,
23  including issuing a Taxpayer Assistance Order.

24      "(d) CONTENT OF TAXPAYER ASSISTANCE ORDER.—
25  A Taxpayer Assistance Order shall contain the name of

81

1 the problem resolution officer, any provision relating to
2 the running of any applicable period of limitation, the
3 name of the person that the Taxpayer Assistance Order
4 assists, the government office (or employee or officer of
5 said government office) to whom it is directed and the ac-
6 tion or cessation of action that the Taxpayer Assistance
7 Order requires of said government officer (or employee or
8 officer of said government office). The Taxpayer Assist-
9 ance Order need not contain findings of fact or its legal
10 basis; however, the problem resolution officer must provide
11 findings of fact and the legal basis for the issuance of the
12 Taxpayer Assistance Order to the sales tax administering
13 authority upon the request of an officer of said authority
14 within 2 weeks of the receipt of such request.

15   "(e) INDEPENDENCE PROTECTED.—Problem resolu-
16 tion officers shall not be disciplined or adversely affected
17 for the issuance of administrative injunctions unless a pat-
18 tern of issuing injunctions that are manifestly unreason-
19 able is proven in an administrative hearing by a prepon-
20 derance of the evidence.

21   "(f) OTHER RIGHTS NOT LIMITED.—Nothing in this
22 section shall limit the authority of the sales tax admin-
23 istering authority, the registered person or other person
24 from pursuing any legal remedy in any court with jurisdic-
25 tion over the dispute at issue.

82

1     "(g) LIMITATIONS.—The running of any applicable

2 period of limitation shall be suspended for a period of 8

3 weeks following the issuance of a Taxpayer Assistance

4 Order or, if specified, for a longer period set forth in the

5 Taxpayer Assistance Order provided the suspension does

6 not exceed 6 months.

7 **"SEC. 604 APPEALS.**

8     "(a) ADMINISTRATIVE APPEALS.—The sales tax ad-

9 ministering authority shall establish an administrative ap-

10 peals process wherein the registered person or other per-

11 son in disagreement with a decision of the sales tax admin-

12 istering authority asserting liability for tax is provided a

13 full and fair hearing in connection with any disputes said

14 person has with the sales tax administering authority.

15     "(b) TIMING OF ADMINISTRATIVE APPEALS.—Said

16 administrative appeal must be made within 60 days of re-

17 ceiving a final notice of amount due pursuant to section

18 605(d) unless leave for an extension is granted by the ap-

19 peals officer in a form prescribed by the Secretary. Leave

20 shall be granted to avoid hardship.

21 **"SEC. 605. TAXPAYER RIGHTS.**

22     "(a) RIGHTS TO BE DISCLOSED.—The sales tax ad-

23 ministering authority shall provide to any person against

24 whom it has—

25         "(1) commenced an audit or investigation;

83

1       "(2) issued a final notice of amount due;

2       "(3) filed an administrative lien, levy, or gar-

3    nishment;

4       "(4) commenced other collection action;

5       "(5) commenced an action for civil penalties; or

6       "(6) any other legal action,

7  a document setting forth in plain English the rights of

8  the person. The document shall explain the administrative

9  appeals process, the authority of the Problem Resolution

10  Office (established pursuant to section 603) and how to

11  contact that Office, the burden of production and persua-

12  sion that the person and the sales tax administering au-

13  thority bear (pursuant to section 506), the right of the

14  person to professional fees (pursuant to section 507), the

15  right to record interviews and such other rights as the per-

16  son may possess under this subtitle. Said document will

17  also set forth the procedures for entering into an install-

18  ment agreement.

19      "(b) RIGHT TO PROFESSIONAL ASSISTANCE.—In all

20  dealings with the sales tax administering authority, a per-

21  son shall have the right to assistance, at their own ex-

22  pense, of 1 or more professional advisors.

23      "(c) RIGHT TO RECORD INTERVIEWS.—Any person

24  who is interviewed by an agent of the sales tax admin-

84

1 istering authority shall have the right to video or audio
2 tape the interview at the person's own expense.

3      "(d) RIGHT TO FINAL NOTICE OF AMOUNT DUE.—
4 No collection or enforcement action will be commenced
5 against a person until 30 days after they have been pro-
6 vided with a final notice of amount due under this subtitle
7 by the sales tax administering authority. The final notice
8 of amount due shall set forth the amount of tax due (along
9 with any interest and penalties due) and the factual and
10 legal basis for such amounts being due with sufficient
11 specificity that such basis can be understood by a reason-
12 able person who is not a tax professional reading the no-
13 tice. The final notice shall be sent by certified mail, return
14 receipt requested, to—

15           "(1) the address last provided by a registered
16      seller; or

17           "(2) the best available address to a person who
18      is not a registered seller.

19      "(e) CONFIDENTIALITY OF TAX INFORMATION.—

20           "(1) IN GENERAL.—All reports and report in-
21      formation (related to any internal revenue law) shall
22      be confidential and except as authorized by this title

23                "(A) no officer or employee (including
24           former officers and employees) of the United
25           States;

85

1      "(B) no officer or employee (including

2      former officers and employees) of any State or

3      local agency who has had access to returns or

4      return information; and

5      "(C) no other person who has had access

6      to returns or return information;

7   shall disclose any report or report information ob-

8   tained by him in any manner in connection with his

9   service as such officer or employee or otherwise.

10     "(2) DESIGNEES.—The sales tax administering

11  authority may, subject to such requirements as the

12  Secretary may impose, disclose the report and report

13  information of a person to that person or persons as

14  that person may designate to receive said informa-

15  tion or return.

16     "(3) OTHER SALES TAX ADMINISTERING AU-

17  THORITIES.—A sales tax administering authority

18  may impose, disclose the report and report informa-

19  tion to another sales tax administering authority.

20     "(4) INCOMPETENCY.—A sales tax admin-

21  istering authority may, subject to such requirements

22  as the Secretary may impose, disclose the report and

23  report information to the committee, trustee, or

24  guardian of a person who is incompetent.

86

1    "(5) DECEASED PERSONS.—A sales tax admin-

2    istering authority may, subject to such requirements

3    as the Secretary may impose, disclose the report and

4    report information to the decedent's—

5        "(A) administrator, executor, estate trust-

6        ee, or

7        "(B) heir at law, next of kin, or beneficiary

8        under a will who has a material interest that

9        will be affected by the information.

10    "(6) BANKRUPTCY.—A sales tax administering

11    authority may, subject to such requirements as the

12    Secretary may impose, disclose the report and report

13    information to a person's trustee in bankruptcy.

14    "(7) CONGRESS.—Upon written request from

15    the Chairman of the Committee on Ways and

16    Means, the Chairman of the Committee on Finance

17    of the Senate, or the Chairman or Chief of Staff of

18    the Joint Committee on Taxation, a sales tax admin-

19    istering authority shall disclose the report and report

20    information, except that any report or report infor-

21    mation that can be associated with or otherwise

22    identify a particular person shall be furnished to

23    such committee only when sitting in closed executive

24    session unless such person otherwise consents in

25    writing to such disclosure.

87

1        "(8) WAIVER OF PRIVACY RIGHTS.—A person

2    may waive confidentiality rights provided by this sec-

3    tion. Such waiver must be in writing.

4        "(9) INTERNAL USE.—Disclosure of the report

5    or report information by officers or employees of a

6    sales tax administering authority to other officers or

7    employees of a sales tax administering authority in

8    the ordinary course of tax administration activities

9    shall not constitute unlawful disclosure of the report

10    or report information.

11        "(10) STATISTICAL USE.—Upon request in

12    writing by the Secretary of Commerce, the Secretary

13    shall furnish such reports and report information to

14    officers and employees of the Department of Com-

15    merce as the Secretary may prescribe by regulation

16    for the purposes of, and only to the extent necessary

17    in, the structuring of censuses and national eco-

18    nomic accounts and conducting related statistical ac-

19    tivities authorized by law.

20        "(11) DEPARTMENT OF THE TREASURY.—Re-

21    turns and return information shall be open for in-

22    spection by officers and employees of the Depart-

23    ment of the Treasury whose official duties require

24    such inspection or disclosure for the purpose of, and

25    only to the extent necessary for, preparing economic

88

1    or financial forecasts, projections, analyses, or esti-

2    mates. Such inspection or disclosure shall be per-

3    mitted only upon written request that sets forth the

4    reasons why such inspection or disclosure is nec-

5    essary and is signed by the head of the bureau or

6    office of the Department of the Treasury requesting

7    the inspection or disclosure.

8    **"SEC. 606. INSTALLMENT AGREEMENTS; COMPROMISES.**

9    "The sales tax administering authority is authorized

10  to enter into written agreements with any person under

11  which the person is allowed to satisfy liability for payment

12  of any tax under this subtitle (and penalties and interest

13  relating thereto) in installment payments if the sales tax

14  administering authority determines that such agreement

15  will facilitate the collection of such liability. The agree-

16  ment shall remain in effect for the term of the agreement

17  unless the information that the person provided to the

18  sales tax administering authority was materially inac-

19  curate or incomplete. The sales tax administering author-

20  ity may compromise any amounts alleged to be due.

21          **"CHAPTER 7—SPECIAL RULES**

"Sec. 701. Hobby activities.
"Sec. 702. Gaming activities.
"Sec. 703. Government purchases.
"Sec. 704. Government enterprises.
"Sec. 705. Mixed use property.
"Sec. 706. Not-for-profit organizations.

89

1 **"SEC. 701. HOBBY ACTIVITIES.**

2     "(a) HOBBY ACTIVITIES.—Neither the exemption af-

3 forded by section 102 for intermediate sales nor the cred-

4 its available pursuant to section 202 or 203 shall be avail-

5 able for any taxable property or service purchased for use

6 in an activity if that activity is not engaged in for-profit.

7     "(b) STATUS DEEMED.—If the activity has received

8 gross payments for the sale of taxable property or services

9 that exceed the sum of—

10         "(1) taxable property and services purchased;

11         "(2) wages and salary paid; and

12         "(3) taxes (of any type) paid,

13 in 2 or more of the most recent 3 calendar years during

14 which it operated when the business activity shall be con-

15 clusively deemed to be engaged in for profit.

16 **"SEC. 702. GAMING ACTIVITIES.**

17     "(a) REGISTRATION.—Any person selling 1 or more

18 chances is a gaming sponsor and shall register, in a form

19 prescribed by the Secretary, with the sales tax admin-

20 istering authority as a gaming sponsor.

21     "(b) CHANCE DEFINED.—For purposes of this sec-

22 tion, the term 'chance' means a lottery ticket, a raffle tick-

23 et, chips, other tokens, a bet or bets placed, a wager or

24 wagers placed, or any similar device where the purchase

25 of the right gives rise to an obligation by the gaming spon-

26 sor to pay upon the occurrence of—

90

1          "(1) a random or unpredictable event; or

2          "(2) an event over which neither the gaming

3      sponsor nor the person purchasing the chance has

4      control over the outcome.

5      "(c) CHANCES NOT TAXABLE PROPERTY OR SERV-

6  ICE.—Notwithstanding any other provision in this sub-

7  title, a chance is not taxable property or services for pur-

8  poses of section 101.

9      "(d) TAX ON GAMING SERVICES IMPOSED.—A 23-

10  percent tax is hereby imposed on the taxable gaming serv-

11  ices of a gaming sponsor. This tax shall be paid and remit-

12  ted by the gaming sponsor. The tax shall be remitted by

13  the 15th day of each month with respect to taxable gaming

14  services during the previous calendar month.

15      "(e) TAXABLE GAMING SERVICES DEFINED.—For

16  purposes of this section, the term 'taxable gaming services'

17  means—

18          "(1) gross receipts of the gaming sponsor from

19      the sale of chances, minus

20          "(2) the sum of—

21              "(A) total gaming payoffs to chance pur-

22          chasers (or their designees); and

23              "(B) gaming specific taxes (other than the

24          tax imposed by this section) imposed by the

25          Federal, State, or local government.

91

1 **"SEC. 703. GOVERNMENT PURCHASES.**

2     "(a) GOVERNMENT PURCHASES.—

3         "(1) PURCHASES BY THE FEDERAL GOVERN-

4     MENT.—Purchases by the Federal Government of

5     taxable property and services shall be subject to the

6     tax imposed by section 101.

7         "(2) PURCHASE BY STATE GOVERNMENTS AND

8     THEIR POLITICAL SUBDIVISIONS.—Purchases by

9     State governments and their political subdivisions of

10     taxable property and services shall be subject to the

11     tax imposed by section 101.

12     "(b) CROSS REFERENCES.—For purchases by gov-

13 ernment enterprises see section 704.

14 **"SEC. 704. GOVERNMENT ENTERPRISES.**

15     "(a) GOVERNMENT ENTERPRISES TO COLLECT AND

16 REMIT TAXES ON SALES.—Nothing in this subtitle shall

17 be construed to exempt any Federal, State, or local gov-

18 ernmental unit or political subdivision (whether or not the

19 State is an administering State) operating a government

20 enterprise from collecting and remitting tax imposed by

21 this subtitle on any sale of taxable property or services.,

22 Government enterprises shall comply with all duties im-

23 posed by this subtitle and shall be liable for penalties and

24 subject to enforcement action in the same manner as pri-

25 vate persons that are not government enterprises.

92

1      "(b) GOVERNMENT ENTERPRISE.—Any entity owned

2  or operated by a Federal, State, or local governmental unit

3  or political subdivision that receives gross payments from

4  private persons is a government enterprise, except that a

5  government-owned entity shall not become a government

6  enterprise for purposes of this section unless in any quar-

7  ter it has revenues from selling taxable property or serv-

8  ices that exceed $2,500.

9      "(c) GOVERNMENT ENTERPRISES INTERMEDIATE

10  SALES.—

11        "(1) IN GENERAL.—Government enterprises

12      shall not be subject to tax on purchases that would

13      not be subject to tax pursuant to section 102(b) if

14      the government enterprise were a private enterprise.

15        "(2) EXCEPTION.—Government enterprises

16      may not use the exemption afforded by section

17      102(b) to serve as a conduit for tax-free purchases

18      by government units that would otherwise be subject

19      to taxation on purchases pursuant to section 703.

20      Transfers of taxable property or services purchased

21      exempt from tax from a government enterprise to

22      such government unit shall be taxable.

23      "(d) SEPARATE BOOKS OF ACCOUNT.—Any govern-

24  ment enterprise must maintain books of account, separate

25  from the nonenterprise government accounts, maintained

93

1 in accordance with generally accepted accounting prin-

2 ciples.

3     "(e) TRADE OR BUSINESS.—A government enterprise

4 shall be treated as a trade or business for purposes of this

5 subtitle.

6     "(f) ENTERPRISE SUBSIDIES CONSTITUTE TAXABLE

7 PURCHASE.—A transfer of funds to a government enter-

8 prise by a government entity without full consideration

9 shall constitute a taxable government purchase with the

10 meaning of section 703 to the extent that the transfer of

11 funds exceeds the fair market value of the consideration.

12 **"SEC. 705. MIXED USE PROPERTY.**

13     "(a) MIXED USE PROPERTY OR SERVICE.—

14         "(1) MIXED USE PROPERTY OR SERVICE DE-

15         FINED.—For purposes of this section, the term

16         'mixed use property or service' is a taxable property

17         or taxable service used for both taxable use or con-

18         sumption and for a purpose that would not be sub-

19         ject to tax pursuant to section 102(a)(1).

20         "(2) TAXABLE THRESHOLD.—Mixed use prop-

21         erty or service shall be subject to tax notwith-

22         standing section 102(a)(1) unless such property or

23         service is used more than 95 percent for purposes

24         that would give rise to an exemption pursuant to

94

1    section 102(a)(1) during each calendar year (or por-
2    tions thereof) it is owned.

3        ''(3) MIXED USE PROPERTY OR SERVICES
4    CREDIT.—A person registered pursuant to section
5    502 is entitled to a business use conversion credit
6    (pursuant to section 202) equal to the product of—

7            ''(A) the mixed use property amount; and

8            ''(B) the business use ratio; and

9            ''(C) the rate of tax imposed by section
10        101.

11        ''(4) MIXED USE PROPERTY AMOUNT.—The
12    mixed use property amount for each month (or frac-
13    tion thereof) in which the property was owned shall
14    be—

15            ''(A) one-three-hundred-sixtieth of the
16        gross payments for real property for 360
17        months or until the property is sold;

18            ''(B) one-eighty-fourth of the gross pay-
19        ments for tangible personal property for 84
20        months or until the property is sold;

21            ''(C) one-sixtieth of the gross payments for
22        vehicles for 60 months or until the property is
23        sold; or

95

1                  "(D) for other types of taxable property or

2            services, a reasonable amount or in accordance

3            with regulations prescribed by the Secretary.

4            "(5) BUSINESS USE RATIO.—For purposes of

5  this section, the term 'business use ratio' means the

6  ratio of business use to total use for a particular cal-

7  endar month (or portion thereof if the property was

8  owned for only part of said calendar month). For ve-

9  hicles, the business use ratio will be the ratio of

10  business purpose miles to total miles in a particular

11  calendar month. For real property, the business use

12  ratio is the ratio of floor space used primarily for

13  business purposes to total floor space in a particular

14  calendar month. For tangible personal property (ex-

15  cept for vehicles), the business use ratio is the ratio

16  of total time used for business purposes to total time

17  used in a particular calendar year. For other prop-

18  erty or services, the business ratio shall be cal-

19  culated using a reasonable method. Reasonable

20  records must be maintained to support a person's

21  business use of the mixed use property or service.

22  "(b) TIMING OF BUSINESS USE CONVERSION CRED-

23  IT ARISING OUT OF OWNERSHIP OF MIXED USE PROP-

24  ERTY.—A person entitled to a credit pursuant to sub-

25  section (a)(3) arising out of the ownership of mixed use

96

1 property must account for the mixed use on a calendar
2 year basis, and may file for the credit with respect to
3 mixed use property in any month following the calendar
4 year giving rise to the credit.

5     "(c) CROSS REFERENCE.—For business use conver-
6 sion credit, see section 202.

7 **"SEC. 706. NOT-FOR-PROFIT ORGANIZATIONS.**

8     "(a) NOT-FOR-PROFIT ORGANIZATIONS.—Dues, con-
9 tributions, and similar payments to qualified not-for-profit
10 organizations shall not be considered gross payments for
11 taxable property or services for purposes of this subtitle.

12     "(b) DEFINITION.—For purposes of this section, the
13 term 'qualified not-for-profit organization' means a not-
14 for-profit organization organized and operated exclu-
15 sively—

16     "(1) for religious, charitable, scientific, testing
17     for public safety, literary, or educational purposes;

18     "(2) as civic leagues or social welfare organiza-
19     tions;

20     "(3) as labor, agricultural, or horticultural or-
21     ganizations;

22     "(4) as chambers of commerce, business
23     leagues, or trade associations; or

24     "(5) as fraternal beneficiary societies, orders, or
25     associations;

97

1 no part of the net earnings of which inures to the benefit

2 of any private shareholder or individual.

3     "(c) QUALIFICATION CERTIFICATES.—Upon applica-

4 tion in a form prescribed by the Secretary, the sales tax

5 administering authority shall provide qualification certifi-

6 cates to qualified not-for-profit organizations.

7     "(d) TAXABLE TRANSACTIONS.—If a qualified not-

8 for-profit organization provides taxable property or serv-

9 ices in connection with contributions, dues, or similar pay-

10 ments to the organization, then it shall be required to

11 treat the provision of said taxable property or services as

12 a purchase taxable pursuant to this subtitle at the fair

13 market value of said taxable property or services.

14     "(e) EXEMPTIONS.—Taxable property and services

15 purchased by a qualified not-for-profit organization shall

16 be eligible for the exemptions provided in section 102.

17           **"CHAPTER 8—FINANCIAL**

18           **INTERMEDIATION SERVICES**

"Sec. 801. Determination of financial intermediation services amount.
"Sec. 802. Bad debts.
"Sec. 803. Timing of tax on financial intermediation services.
"Sec. 804. Financing leases.
"Sec. 805. Basic interest rate.
"Sec. 806. Foreign financial intermediation services.

19 **"SEC. 801. DETERMINATION OF FINANCIAL INTERMEDI-**

20           **ATION SERVICES AMOUNT.**

21     "(a) FINANCIAL INTERMEDIATION SERVICES.—For

22 purposes of this subtitle—

98

1     "(1) IN GENERAL.—The term 'financial inter-

2 mediation services' means the sum of—

3         "(A) explicitly charged fees for financial

4 intermediation services, and

5         "(B) implicitly charged fees for financial

6 intermediation services.

7     "(2) EXPLICITLY CHARGED FEES FOR FINAN-

8 CIAL INTERMEDIATION SERVICES.—The term 'explic-

9 itly charged fees for financial intermediation serv-

10 ices' includes—

11         "(A) brokerage fees;

12         "(B) explicitly stated banking, loan origi-

13 nation, processing, documentation, credit check

14 fees, or other similar fees;

15         "(C) safe-deposit box fees;

16         "(D) insurance premiums, to the extent

17 such premiums are not allocable to the invest-

18 ment account of the underlying insurance pol-

19 icy;

20         "(E) trustees' fees; and

21         "(F) other financial services fees (includ-

22 ing mutual fund management, sales, and exit

23 fees).

24     "(3) IMPLICITLY CHARGED FEES FOR FINAN-

25 CIAL INTERMEDIATION SERVICES.—

99

1          "(A) IN GENERAL.—The term 'implicitly

2     charged fees for financial intermediation serv-

3     ices' includes the gross imputed amount in rela-

4     tion to any underlying interest-bearing invest-

5     ment, account, or debt.

6          "(B) GROSS IMPUTED AMOUNT.—For pur-

7     poses of subparagraph (A), the term 'gross im-

8     puted amount' means—

9               "(i) with respect to any underlying in-

10          terest-bearing investment or account, the

11          product of—

12                    "(I) the excess (if any) of the

13               basic interest rate (as defined in sec-

14               tion 805) over the rate paid on such

15               investment; and

16                    "(II) the amount of the invest-

17               ment or account; and

18               "(ii) with respect to any underlying

19          interest-bearing debt, the product of—

20                    "(I) the excess (if any) of the

21               rate paid on such debt over the basic

22               interest rate (as defined in section

23               805); and

24                    "(II) the amount of the debt.

100

1    "(b) SELLER OF FINANCIAL INTERMEDIATION SERV-
2  ICES.—For purposes of section 103(a), the seller of finan-
3  cial intermediation services shall be—

4          "(1) in the case of explicitly charged fees for fi-
5      nancial intermediation services, the seller shall be
6      the person who receives the gross payments for the
7      charged financial intermediation services;

8          "(2) in the case of implicitly charged fees for fi-
9      nancial intermediation services with respect to any
10     underlying interest-bearing investment or account,
11     the person making the interest payments on the in-
12     terest-bearing investment or account; and

13         "(3) in the case of implicitly charged fees for fi-
14     nancial intermediation services with respect to any
15     interest-bearing debt, the person receiving the inter-
16     est payments on the interest-bearing debt.

17  **"SEC. 802. BAD DEBTS.**

18     "(a) IN GENERAL.—For purposes of section 205(a),
19  a bad debt shall be a business debt that becomes wholly
20  or partially worthless to the payee.

21     "(b) BUSINESS LOAN.—For purposes of subsection
22  (a), a business loan or debt is a bona fide loan or debt
23  made for a business purpose that both parties intended
24  be repaid.

25     "(c) DETERMINATION OF WORTHLESSNESS.—

101

1          "(1) IN GENERAL.—No loan or debt shall be

2     considered wholly or partially worthless unless it has

3     been in arrears for 180 days or more, except that if

4     a debt is discharged wholly or partially in bank-

5     ruptcy before 180 days has elapsed, then it shall be

6     deemed wholly or partially worthless on the date of

7     discharge.

8          "(2) DETERMINATION BY HOLDER.—A loan or

9     debt that has been in arrears for 180 days or more

10     may be deemed wholly or partially worthless by the

11     holder unless a payment schedule has been entered

12     into between the debtor and the lender.

13     "(d) CROSS REFERENCE.—See section 205(c) for tax

14 on subsequent payments.

15 **"SEC. 803. TIMING OF TAX ON FINANCIAL INTERMEDIATION**

16                        **SERVICES.**

17     "The tax on financial intermediation services pro-

18 vided by section 801 with respect to an underlying invest-

19 ment account or debt shall be imposed and collected with

20 the same frequency that statements are rendered by the

21 financial institution in connection with the investment ac-

22 count or debt but not less frequently than quarterly.

23 **"SEC. 804. FINANCING LEASES.**

24     "(a) DEFINITION.—For purposes of this section, the

25 term 'financing lease' means any lease under which the

102

1 lessee has the right to acquire the property for 50 percent

2 or less of its fair market value at the end of the lease

3 term.

4    "(b) GENERAL RULE.—Financing leases shall be

5 taxed in the method set forth in this section.

6    "(c) DETERMINATION OF PRINCIPAL AND INTEREST

7 COMPONENTS OF FINANCING LEASE.—The Secretary

8 shall promulgate rules for disaggregating the principal

9 and interest components of a financing lease. The prin-

10 cipal amount shall be determined to the extent possible

11 by examination of the contemporaneous sales price or

12 prices of property the same or similar as the leased prop-

13 erty.

14    "(d) ALTERNATIVE METHOD.—In the event that con-

15 temporaneous sales prices or property the same or similar

16 as the leased property are not available, the principal and

17 interest components of a financing lease shall be

18 disaggregated using the applicable interest rate (as de-

19 fined in section 512) plus 4 percent.

20    "(e) PRINCIPAL COMPONENT.—The principal compo-

21 nent of the financing lease shall be subject to tax as if

22 a purchase in the amount of the principal component had

23 been made on the day on which said lease was executed.

24    "(f) INTEREST COMPONENT.—The financial inter-

25 mediation services amount with respect to the interest

103

1   component of the financing lease shall be subject to tax

2   under this subtitle.

3       "(g) COORDINATION.—If the principal component

4   and financial intermediation services amount with respect

5   to the interest component of a lease have been taxed pur-

6   suant to this section, then the gross lease or rental pay-

7   ments shall not be subject to additional tax.

**8   "SEC. 805. BASIC INTEREST RATE.**

9       "For purposes of this chapter, the basic interest rate

10  with respect to a debt instrument, investment, financing

11  lease, or account shall be the applicable interest rate (as

12  determined in section 512). For debt instruments, invest-

13  ments, or accounts of contractually fixed interest, the ap-

14  plicable interest rate of the month of issuance shall apply.

15  For debt instruments, investments, or accounts of variable

16  interest rates and which have no reference interest rate,

17  the applicable interest shall be the Federal short-term in-

18  terest rate for each month. For debt instruments, invest-

19  ments, or accounts of variable interest rates and which

20  have a reference interest rate, the applicable interest shall

21  be the applicable interest rate for the reference interest

22  rate for each month.

104

1 "SEC. 806. FOREIGN FINANCIAL INTERMEDIATION SERV-
2            ICES.

3      "(a) SPECIAL RULES RELATING TO INTERNATIONAL
4 FINANCIAL     INTERMEDIATION     SERVICES.—Financial
5 intermediation services shall be deemed as used or con-
6 sumed within the United States if the person (or any re-
7 lated party as defined in section 205(e)) purchasing the
8 services is a resident of the United States.

9      "(b) DESIGNATION OF TAX REPRESENTATIVE.—Any
10 person that provides financial intermediation services to
11 United States residents must, as a condition of lawfully
12 providing such services, designate, in a form prescribed
13 by the Secretary, a tax representative for purposes of this
14 subtitle. The tax representative shall be responsible for en-
15 suring that the taxes imposed by this subtitle are collected
16 and remitted and shall be jointly and severally liable for
17 collecting and remitting these taxes. The Secretary may
18 require reasonable bond of the tax representative. The
19 Secretary or a sales tax administering authority may bring
20 an action seeking a temporary restraining order, an in-
21 junction, or such other order as may be appropriate to
22 enforce this section.

23     "(c) CROSS REFERENCES.—For definition of person,
24 see section 901.

25      "CHAPTER 9—ADDITIONAL MATTERS

"Sec. 901. Additional matters.

•HR 25 IH

105

"Sec. 902. Transition matters.
"Sec. 903. Wages to be reported to Social Security Administration.
"Sec. 904. Trust Fund revenue.
"Sec. 905. Withholding of tax on nonresident aliens and foreign corporations.

1 **"SEC. 901. ADDITIONAL MATTERS.**

2     "(a) INTANGIBLE PROPERTY ANTIAVOIDANCE

3 RULE.—Notwithstanding section 2(a)(14)(a)(i), the sale

4 of a copyright or trademark shall be treated as the sale

5 of taxable services (within the meaning of section 101(a))

6 if the substance of the sales of copyright or trademark

7 constituted the sale of the services that produced the copy-

8 righted material or the trademark.

9     "(b) DE MINIMIS PAYMENTS.—Up to $400 of gross

10 payments per calendar year shall be exempt from the tax

11 imposed by section 101 if—

12         "(1) made by a person not in connection with

13     a trade or business at any time during such calendar

14     year prior to making said gross payments, and

15         "(2) made to purchase any taxable property or

16     service which is imported into the United States by

17     such person for use or consumption by such person

18     in the United States.

19     "(c) DE MINIMIS SALES.—Up to $1,200 per calendar

20 year of gross payments shall be exempt from the tax im-

21 posed by section 101 if received—

1 ''(1) by a person not in connection with a trade
2 or business during such calendar year prior to the
3 receipt of said gross payments; and
4 ''(2) in connection with a casual or isolated
5 sale.
6 ''(d) DE MINIMIS SALE OF FINANCIAL INTERMEDI-
7 ATION SERVICES.—Up to $10,000 per calendar year of
8 gross payments received by a person from the sale of fi-
9 nancial intermediation services (as determined in accord-
10 ance with section 801) shall be exempt from the tax im-
11 posed by section 101. The exemption provided by this sub-
12 section is in addition to other exemptions afforded by this
13 chapter. The exemption provided by this subsection shall
14 not be available to large sellers (as defined in section
15 501(e)(3)).
16 ''(e) PROXY BUYING TAXABLE.—If a registered per-
17 son provides taxable property or services to a person either
18 as a gift, prize, reward, or as remuneration for employ-
19 ment, and such taxable property or services were not pre-
20 viously subject to tax pursuant to section 101, then the
21 provision of such taxable property or services by the reg-
22 istered person shall be deemed the conversion of such tax-
23 able property or services to personal use subject to tax
24 pursuant to section 103(c) at the tax inclusive fair market
25 value of such taxable property or services.

1  ''(f) SUBSTANCE OVER FORM.—The substance of a
2  transaction will prevail over its form if the transaction has
3  no bona fide economic purpose and is designed to evade
4  tax imposed by this subtitle.
5  ''(g) CERTAIN EMPLOYEE DISCOUNTS TAXABLE.—
6  ''(1) EMPLOYEE DISCOUNT.—For purposes of
7  this subsection, the term 'employee discount' means
8  an employer's offer of taxable property or services
9  for sale to its employees or their families (within the
10  meaning of section 302(b)) for less than the offer of
11  such taxable property or services to the general pub-
12  lic.
13  ''(2) EMPLOYEE DISCOUNT AMOUNT.—For pur-
14  poses of this subsection, the employee discount
15  amount is the amount by which taxable property or
16  services are sold pursuant to an employee discount
17  below the amount for which such taxable property or
18  services would have been sold to the general public.
19  ''(3) TAXABLE AMOUNT.—If the employee dis-
20  count amount exceeds 20 percent of the price that
21  the taxable property or services would have been sold
22  to the general public, then the sale of such taxable
23  property or services by the employer shall be deemed
24  the conversion of such taxable property or services
25  to personal use and tax shall be imposed on the tax-

1    able employee discount amount. The taxable em-

2    ployee discount amount shall be—

3    ''(A) the employee discount amount, minus

4    ''(B) 20 percent of the amount for which

5    said taxable property or services would have

6    been sold to the general public.

7    ''(h) SATURDAY, SUNDAY, OR LEGAL HOLIDAY.—

8    When the last day prescribed for performing any act re-

9    quired by this subtitle falls on a Saturday, Sunday, or

10    legal holiday (in the jurisdiction where the return is to

11    be filed), the performance of such act shall be considered

12    timely if it is performed on the next day which is not a

13    Saturday, Sunday, or legal holiday (in the jurisdiction

14    where the return is to be filed).

15    **"SEC. 902. TRANSITION MATTERS.**

16    ''(a) INVENTORY.—

17    ''(1) QUALIFIED INVENTORY.—Inventory held

18    by a trade or business on the close of business on

19    December 31, 2008, shall be qualified inventory if it

20    is sold—

21    ''(A) before December 31, 2009,

22    ''(B) by a registered person; and

23    ''(C) subject to the tax imposed by section

24    101.

109

1 ''(2) COSTS.—For purposes of this section,
2 qualified inventory shall have the cost that it had for
3 Federal income tax purposes for the trade or busi-
4 ness as of December 31, 2008 (including any
5 amounts capitalized by reason of section 263A of the
6 Internal Revenue Code of 1986 as in effect on De-
7 cember 31, 2008).
8 ''(3) TRANSITIONAL INVENTORY CREDIT.—The
9 trade or business which held the qualified inventory
10 on the close of business on December 31, 2008, shall
11 be entitled to a transitional inventory credit equal to
12 the cost of the qualified inventory (determined in ac-
13 cordance with paragraph (2)) times the rate of tax
14 imposed by section 101.
15 ''(4) TIMING OF CREDIT.—The credit provided
16 under paragraph (3) shall be allowed with respect to
17 the month when the inventory is sold subject to the
18 tax imposed by this subtitle. Said credit shall be re-
19 ported as an intermediate and export sales credit
20 and the person claiming said credit shall attach sup-
21 porting schedules in the form that the Secretary
22 may prescribe.
23 ''(b) WORK-IN-PROCESS.—For purposes of this sec-
24 tion, inventory shall include work-in-process.

1 ''(e) QUALIFIED INVENTORY HELD BY BUSINESSES
2 NOT SELLING SAID QUALIFIED INVENTORY AT RE-
3 TAIL.—
4 ''(1) IN GENERAL.—Qualified inventory held by
5 businesses that sells said qualified inventory not sub-
6 ject to tax pursuant to section 102(a) shall be eligi-
7 ble for the transitional inventory credit only if that
8 business (or a business that has successor rights
9 pursuant to paragraph (2)) receives certification in
10 a form satisfactory to the Secretary that the quali-
11 fied inventory was subsequently sold subject to the
12 tax imposed by this subtitle.
13 ''(2) TRANSITIONAL INVENTORY CREDIT RIGHT
14 MAY BE SOLD.—The business entitled to the transi-
15 tional inventory credit may sell the right to receive
16 said transitional inventory credit to the purchaser of
17 the qualified inventory that gave rise to the credit
18 entitlement. Any purchaser of such qualified inven-
19 tory (or property or services into which the qualified
20 inventory has been incorporated) may sell the right
21 to said transitional inventory credit to a subsequent
22 purchaser of said qualified inventory (or property or
23 services into which the qualified inventory has been
24 incorporated).

111

# "SEC. 903. WAGES TO BE REPORTED TO SOCIAL SECURITY ADMINISTRATION.

1 "(a) IN GENERAL.—Employers shall submit such in-

2 formation to the Social Security Administration as is re-

3 quired by the Social Security Administration to calculate

4 Social Security benefits under title II of the Social Secu-

5 rity Act, including wages paid, in a form prescribed by

6 the Secretary. A copy of the employer submission to the

7 Social Security Administration relating to each employee

8 shall be provided to each employee by the employer.

9 "(b) WAGES.—For purposes of this section, the term

10 'wages' means all cash remuneration for employment (in-

11 cluding tips to an employee by third parties provided that

12 the employer or employee maintains records documenting

13 such tips) including self-employment income; except that

14 such term shall not include—

15 "(1) any insurance benefits received (including

16 death benefits);

17 "(2) pension or annuity benefits received;

18 "(3) tips received by an employee over $5,000

19 per year; and

20 "(4) benefits received under a government enti-

21 tlement program (including Social Security benefits

22 and unemployment compensation benefits).

23 "(c) SELF-EMPLOYMENT INCOME.—For purposes of

24 subsection (b), the term 'self-employment income' means

•HR 25 IH

1 gross payments received for taxable property or services

2 minus the sum of—

3 ''(1) gross payments made for taxable property

4 or services (without regard to whether tax was paid

5 pursuant to section 101 on such taxable property or

6 services), and

7 ''(2) wages paid by the self-employed person to

8 employees of the self-employed person.

9 **''SEC. 904. TRUST FUND REVENUE.**

10 ''(a) SECRETARY TO MAKE ALLOCATION OF SALES

11 TAX REVENUE.—The Secretary shall allocate the revenue

12 received by virtue of the tax imposed by section 101 in

13 accordance with this section. The revenue shall be allo-

14 cated among—

15 ''(1) the general revenue,

16 ''(2) the old-age and survivors insurance trust

17 fund,

18 ''(3) the disability insurance trust fund,

19 ''(4) the hospital insurance trust fund, and

20 ''(5) the Federal supplementary medical insur-

21 ance trust fund.

22 ''(b) GENERAL RULE.—

23 ''(1) GENERAL REVENUE.—The proportion of

24 total revenue allocated to the general revenue shall

25 be the same proportion as the rate in section

1 101(b)(4) bears to the combined Federal tax rate

2 percentage (as defined in section 101(b)(3)).

3 ''(2) The amount of revenue allocated to the

4 old-age and survivors insurance and disability insur-

5 ance trust funds shall be the same proportion as the

6 old-age, survivors and disability insurance rate (as

7 defined in subsection (d)) bears to the combined

8 Federal tax rate percentage (as defined in section

9 101(b)(3)).

10 ''(3) The amount of revenue allocated to the

11 hospital insurance and Federal supplementary med-

12 ical insurance trust funds shall be the same propor-

13 tion as the hospital insurance rate (as defined in

14 subsection (e)) bears to the combined Federal tax

15 rate percentage (as defined in section 101(b)(3)).

16 ''(e) CALENDAR YEAR 2009.—Notwithstanding sub-

17 section (b), the revenue allocation pursuant to subsection

18 (a) for calendar year 2009 shall be as follows:

19 ''(1) 64.83 percent of total revenue to general

20 revenue;

21 ''(2) 27.43 percent of total revenue to the old-

22 age and survivors insurance and disability insurance

23 trust funds, and

1   ''(3) 7.74 percent of total revenue to the hos-
2 pital insurance and Federal supplementary medical
3 insurance trust funds.
4   ''(d) OLD-AGE, SURVIVORS AND DISABILITY INSUR-
5 ANCE RATE.—The old-age, survivors and disability insur-
6 ance rate shall be determined by the Social Security Ad-
7 ministration. The old-age, survivors and disability insur-
8 ance rate shall be that sales tax rate which is necessary
9 to raise the same amount of revenue that would have been
10 raised by imposing a 12.4 percent tax on the Social Secu-
11 rity wage base (including self-employment income) as de-
12 termined in accordance with chapter 21 of the Internal
13 Revenue Code most recently in effect prior to the enact-
14 ment of this Act. The rate shall be determined using actu-
15 arially sound methodology and announced at least 6
16 months prior to the beginning of the Calendar year for
17 which it applies.
18   ''(e) HOSPITAL INSURANCE RATE.—The hospital in-
19 surance rate shall be determined by the Social Security
20 Administration. The hospital insurance rate shall be that
21 sales tax rate which is necessary to raise the same amount
22 of revenue that would have been raised by imposing a 2.9
23 percent tax on the Medicare wage base (including self-em-
24 ployment income) as determined in accordance with chap-
25 ter 21 of the Internal Revenue Code most recently in effect

115

1  prior to the enactment of this Act. The rate shall be deter-

2  mined using actuarially sound methodology, and an-

3  nounced at least 6 months prior to the beginning of the

4  calendar year for which it applies.

5      "(f) ASSISTANCE.—The Secretary shall provide such

6  technical assistance as the Social Security Administration

7  shall require to determine the old-age, survivors and dis-

8  ability insurance rate and the hospital insurance rate.

9      "(g) FURTHER ALLOCATIONS.—

10     "(1) OLD-AGE, SURVIVORS AND DISABILITY IN-

11  SURANCE.—The Secretary shall allocate revenue re-

12  ceived because of the old-age, survivors and dis-

13  ability insurance rate to the old-age and survivors

14  insurance trust fund and the disability insurance

15  trust fund in accordance with law or, in the absence

16  of other statutory provision, in the same proportion

17  that the old-age and survivors insurance trust fund

18  receipts bore to the sum of the old-age and survivors

19  insurance trust fund receipts and the disability in-

20  surance trust fund receipts in calendar year 2008

21  (taking into account only receipts pursuant to chap-

22  ter 21 of the Internal Revenue Code).

23     "(2) HOSPITAL INSURANCE.—The Secretary

24  shall allocate revenue received because of the hos-

25  pital insurance rate to the hospital insurance trust

116

1     fund and the Federal supplementary medical insur-

2     ance trust fund in accordance with law or, in the ab-

3     sence of other statutory provision, in the same pro-

4     portion that hospital insurance trust fund receipts

5     bore to the sum of the hospital insurance trust fund

6     receipts and Federal supplementary medical insur-

7     ance trust fund receipts in calendar year 2008 (tak-

8     ing into account only receipts pursuant to chapter

9     21 of the Internal Revenue Code).

10    **"SEC. 905. WITHHOLDING OF TAX ON NONRESIDENT ALIENS**

11          **AND FOREIGN CORPORATIONS.**

12    "(a) IN GENERAL.—All persons, in whatever capacity

13 acting (including lessees or mortgagors or real or personal

14 property, fiduciaries, employers, and all officers and em-

15 ployees of the United States) having control, receipt, cus-

16 tody, disposal, or payment of any income to the extent

17 such income constitutes gross income from sources within

18 the United States of any nonresident alien individual, for-

19 eign partnership, or foreign corporation shall deduct and

20 withhold from that income a tax equal to 23 percent there-

21 of.

22    "(b) EXCEPTION.—No tax shall be required to be de-

23 ducted from interest on portfolio debt investments.

24    "(c) TREATY COUNTRIES.—In the case of payments

25 to nonresident alien individuals, foreign partnerships, or

117

1 foreign corporations that have a residence in (or the na-
2 tionality of a country) that has entered into a tax treaty
3 with the United States, then the rate of withholding tax
4 prescribed by the treaty shall govern.".

**SEC. 202. CONFORMING AND TECHNICAL AMENDMENTS.**

6     (a) REPEALS.—The following provisions of the Inter-
7 nal Revenue Code of 1986 are repealed:

8         (1) Subchapter A of chapter 61 of subtitle D
9     (as redesignated by section 104) (relating to infor-
10     mation and returns).

11         (2) Sections 6103 through 6116 of subchapter
12     B of chapter 61 of subtitle D (as so redesignated).

13         (3) Section 6157 (relating to unemployment
14     taxes).

15         (4) Section 6163 (relating to estate taxes).

16         (5) Section 6164 (relating to corporate taxes).

17         (6) Section 6166 (relating to estate taxes).

18         (7) Section 6167 (relating to foreign expropria-
19     tion losses).

20         (8) Sections 6201, 6205 and 6207 (relating to
21     assessments).

22         (9) Subchapter C of chapter 63 of subtitle D
23     (as so redesignated) (relating to tax treatment of
24     partnership items).

118

1        (10) Section 6305 (relating to collections of cer-
2    tain liabilities).

3        (11) Sections 6314, 6315, 6316, and 6317 (re-
4    lating to payments of repealed taxes).

5        (12) Sections 6324, 6324A and 6324B (relat-
6    ing to liens for estate and gift taxes).

7        (13) Section 6344 (relating to cross references).

8        (14) Section 6411 (relating to carrybacks).

9        (15) Section 6413 (relating to employment
10    taxes).

11        (16) Section 6414 (relating to withheld income
12    taxes).

13        (17) Section 6422 (relating to cross references).

14        (18) Section 6425 (relating to overpayment of
15    corporate estimated taxes).

16        (19) Section 6504 (relating to cross references).

17        (20) Section 6652 (relating to failure to file
18    certain information returns).

19        (21) Sections 6654 and 6655 (relating to fail-
20    ure to payment estimated income tax).

21        (22) Section 6662 (relating to penalties).

22        (23) Sections 6677 through 6711 (relating to
23    income tax related penalties).

24        (24) Part II of subchapter B of chapter 68 (re-
25    lating to certain information returns).

119

1    (25) Part I of subchapter A of chapter 70 (re-
2    lating to termination of taxable year).

3    (26)  Section  6864  (relating  to  certain
4    carrybacks).

5    (27) Section 7103 (relating to cross references).

6    (28)  Section  7204  (relating  to  withholding
7    statements).

8    (29) Section 7211 (relating certain statements).

9    (30) Section 7231 (relating to failure to obtain
10   certain licenses).

11   (31)  Section  7270  (relating  to  insurance  poli-
12   cies).

13   (32) Section 7404 (relating to estate taxes).

14   (33) Section 7404 (relating to income tax pre-
15   parers).

16   (34) Section 7408 (relating to income tax shel-
17   ters).

18   (35) Section 7409 (relating to 501(c)(3) organi-
19   zations).

20   (36) Section 7427 (relating to income tax pre-
21   parers).

22   (37) Section 7428 (relating to 501(c)(3) organi-
23   zations).

24   (38) Section 7476 (relating to declaratory judg-
25   ments relating to retirement plans).

120

1     (39) Section 7478 (relating to declaratory judg-
2     ments relating to certain tax-exempt obligations).

3     (40) Section 7508 (relating to postponing time
4     for certain actions required by the income, estate,
5     and gift tax).

6     (41) Section 7509 (relating to Postal Service
7     payroll taxes).

8     (42) Section 7512 (relating to payroll taxes).

9     (43) Section 7517 (relating to estate and gift
10    tax evaluation).

11    (44) Section 7518 (relating to Merchant Marine
12    tax incentives).

13    (45) Section 7519 (relating to taxable years).

14    (46) Section 7520 (relating to insurance and
15    annuity valuation tables).

16    (47) Section 7523 (relating to reporting Fed-
17    eral income and outlays on Form 1040s).

18    (48) Section 7611 (relating to church income
19    tax exemptions and church unrelated business in-
20    come tax inquiries).

21    (49) Section 7654 (relating to possessions' in-
22    come taxes).

23    (50) Section 7655 (relating to cross references).

24    (51) Section 7701(a)(16).

25    (52) Section 7701(a)(19).

121

1      (53) Section 7701(a)(20).

2      (54) Paragraphs (32) through (38) of section

3   7701(a).

4      (55) Paragraphs (41) through (46) of section

5   7701(a).

6      (56) Section 7701(b).

7      (57) Subsections (e) through (m) of section

8   7701.

9      (58) Section 7702 (relating to life insurance

10  contracts).

11     (59) Section 7702A (relating to modified en-

12  dowment contracts).

13     (60) Section 7702B (relating to long-term care

14  insurance).

15     (61) Section 7703 (relating to the determina-

16  tion of marital status).

17     (62) Section 7704 (relating to publicly traded

18  partnerships).

19     (63) Section 7805.

20     (64) Section 7851.

21     (65) Section 7872.

22     (66) Section 7873.

23   (b) OTHER CONFORMING AND TECHNICAL AMEND-

24  MENTS.—

122

1    (1) Section 6151 is amended by striking sub-
2    section (b) and by redesignating subsection (c) as
3    subsection (b).

4    (2) Section 6161 is amended to read as follows:

**"SEC. 6161. EXTENSION OF TIME FOR PAYING TAX.**

6    "The Secretary, except as otherwise provided in this
7    title, may extend the time for payment of the amount of
8    the tax shown or required to be shown on any return, re-
9    port, or declaration required under authority of this title
10   for a reasonable period not to exceed 6 months (12 months  .
11   in the case of a taxpayer who is abroad).".

12   (3) Section 6211(a) is amended—
13       (A) by striking "income, estate and gift
14       taxes imposed by subtitles A and B and",
15       (B) by striking "subtitle A or B, or", and
16       (C) by striking ", as defined in subsection
17       (b)(2)," in paragraph (2).

18   (4) Section 6211(b) is amended to read as fol-
19   lows:

20   "(b) REBATE DEFINED.—For purposes of subsection
21   (a)(2), the term 'rebate' means so much of an abatement,
22   credit, refund, or other payment, as was made on the
23   ground that the tax imposed by chapter 41, 42, 43, or
24   44 was less than the excess of the amount specified in
25   subsection (a)(1) over the rebates previously made.".

123

1    (5) Section 6212(b) is amended to read as fol-
2    lows:

3    "(b) ADDRESS FOR NOTICE OF DEFICIENCY.—In the
4    absence of notice to the Secretary under section 6903 of
5    the existence of a fiduciary relationship, notice of a defi-
6    ciency in respect of a tax imposed by chapter 42, 43, or
7    44 if mailed to the taxpayer at his last known address,
8    shall be sufficient for purposes of such chapter and this
9    chapter even if such taxpayer is deceased, or is under a
10   legal disability, or, in the case of a corporation has termi-
11   nated its existence.".

12   (6) Section 6302(b) is amended by striking
13   "21,".

14   (7) Section 6302 is amended by striking sub-
15   sections (g) and (i) and by redesignating subsection
16   (h) as subsection (g).

17   (8) Section 6325 is amended by striking sub-
18   section (c) and by redesignating subsections (d)
19   through (h) as subsections (c) through (g), respec-
20   tively.

21   (9) Section 6402(d) is amended by striking
22   paragraph (3).

23   (10) Section 6402 is amended by striking sub-
24   section (j) and by redesignating subsection (k) as
25   subsection (j).

124

1       (11) Section 6501(b) is amended—

2           (A) by striking "except tax imposed by

3       chapter 3, 21, or 24," in paragraph (1), and

4           (B) by striking paragraph (2) and by re-

5       designation paragraphs (3) and (4) as para-

6       graphs (2) and (3), respectively.

7       (12) Section 6501(c) is amended by striking

8   paragraphs (5) through (9).

9       (13) Section 6501(e) is amended by striking

10  "subsection (c)—" and all that follows through

11  "subtitle D" in paragraph (3) and inserting "sub-

12  section (c), in the case of a return of a tax imposed

13  under a provision of subtitle B".

14       (14) Section 6501 is amended by striking sub-

15  section (f) through (k) and subsections (m) and (n)

16  and by redesignating subsection (1) as subsection

17  (f).

18       (15) Section 6503(a) is amended—

19           (A) by striking paragraph (2),

20           (B) by striking "DEFICIENCY.—"and all

21       that follows through "The running" and insert-

22       ing "DEFICIENCY.—The running", and

23           (C) by striking "income, estate, gift and".

24       (16) Section 6503 is amended by striking sub-

25  sections (e), (f), (i), and (k) and by redesignating

125

1    subsections (g), (h), and (j) as subsections (e), (f),

2    and (g), respectively.

3        (17) Section 6511 is amended by striking sub-

4    sections (d) and (g) and by redesignating sub-

5    sections (f) and (h) as subsections (d) and (e), re-

6    spectively.

7        (18) Section 6512(b)(1) is amended by striking

8    "of income tax for the same taxable year, of gift tax

9    for the same calendar year or calendar quarter, of

10   estate tax in respect of the taxable estate of the

11   same decedent or".

12       (19) Section 6513 is amended—

13           (A) by striking "(a) EARLY RETURN OR

14       ADVANCE PAYMENT OF TAX.—",

15           (B) by striking subsections (b) and (c).

16       (20) Chapter 67 is amended by striking sub-

17   chapters A through D and inserting the following:

18   **"SEC. 6601. INTEREST ON OVERPAYMENTS AND UNDER-**

19   **PAYMENT.**

20       "(a) UNDERPAYMENTS.—If any amount of tax im-

21   posed by this title is not paid on or before the last date

22   prescribed for payment, interest on such amount at the

23   Federal short-term rate (as defined in section 512(b))

24   shall be paid from such last date to the date paid.

126

1    "(b) OVERPAYMENTS.—Interest shall be allowed and
2    paid upon any overpayment in respect of any internal rev-
3    enue tax at the Federal short-term rate (as defined in sec-
4    tion 512(b)) from 60 days after the date of the overpay-
5    ment until the date the overpayment is refunded.".

6        (21) Section 6651(a)(1) is amended by striking
7        "subchapter A of chapter 61 (other than part III
8        thereof,".

9        (22) Section 6656 is amended by striking sub-
10       section (c) and by redesignating subsection (d) as
11       subsection (c).

12       (23) Section 6663 is amended by striking sub-
13       section (c).

14       (24) Section 6664(c) is amended—

15           (A) by striking "Exception.—" and all
16           that follows through "No penalty" and insert-
17           ing "Exception.—No penalty," and

18           (B) by striking paragraphs (2) and (3).

19       (25) Chapter 72 is amended by striking all
20       matter preceding section 7011.

21       (26) Section 7422 is amended by striking sub-
22       sections (h) and (i) and by redesignating subsections
23       (j) and (k) as subsections (h) and (i), respectively.

24       (27) Section 7451 is amended to read as fol-
25       lows:

127

1 **"SEC. 7451. FEE FOR FILING PETITION.**

2     "The Tax Court is authorized to impose a fee in an

3 amount not in excess of $60 to be fixed by the Tax Court

4 for the filing of any petition for the redetermination of

5 a deficiency.".

6     (28) Section 7454 is amended by striking sub-

7     section (b) and by redesignating subsection (c) as

8     subsection (b).

9     (29) Section 7463(a) is amended—

10         (A) by striking paragraphs (2) and (3),

11         (B) by redesignating paragraph (4) as

12         paragraph (2), and

13         (C) by striking "D" in paragraph (2) (as

14         so redesignated) and inserting "B".

15     (30) Section 7463(c) is amended by striking

16     "sections 6214(a) and" and inserting "section".

17     (31) Section 7463(e) is amended by striking ",

18     to the extent that the procedures described in sub-

19     chapter B of chapter 63 apply".

20     (32) Section 7481 is amended by striking sub-

21     section (d).

22     (33) Section 7608 is amended by striking "sub-

23     title E" each place it appears and inserting "subtitle

24     C".

25     (34) Section 7651 is amended by striking para-

26     graph (5).

128

1    (35) Section 7701(a)(29) is amended by strik-
2  ing "1986" and inserting "2007".

3    (36) Section 7809(c) is amended by striking
4  paragraphs (1) and (4) and by redesignating para-
5  graphs (2) and (3) as paragraphs (1) and (2), re-
6  spectively.

7    (37) Section 7871(a) is amended by striking
8  paragraphs (1) and (3) through (6) and by redesig-
9  nating paragraphs (2) and (7) as paragraphs (1)
10  and (2), respectively.

11    (38) Section 7871 is amended by striking sub-
12  section (c) and by redesignating subsections (d) and
13  (e) as subsections (c) and (d), respectively.

14    (39) Section 8021 is amended by striking sub-
15  section (a) and by redesignating subsections (b)
16  through (f) as subsections (a) through (e), respec-
17  tively.

18    (40) Section 8022(a)(2)(A) is amended by
19  striking ", particularly the income tax".

20    (41) Section 8023 is amended by striking "In-
21  ternal Revenue Service" each place it appears and
22  inserting "Department of the Treasury".

23    (42) Section 9501(b)(2) is amended by striking
24  subparagraph (C).

129

1    (43) Section 9702(a) is amended by striking
2 paragraph (4).

3    (44) Section 9705(a) is amended by striking
4 paragraph (4) and by redesignating paragraph (5)
5 as paragraph (4).

6    (45) Section 9706(d)(2)(A) is amended by
7 striking "6103" and inserting "605(e)".

8    (46) Section 9707 is amended by striking sub-
9 section (f).

10    (47) Section 9712(d) is amended by striking
11 paragraph (5) and by redesignating paragraph (6)
12 as paragraph (5).

13    (48) Section 9803(a) is amended by striking
14 "(as defined in section 414(f))".

## TITLE III—OTHER MATTERS

15

### SEC. 301. PHASE-OUT OF ADMINISTRATION OF REPEALED

16
17                FEDERAL TAXES.

18    (a) APPROPRIATIONS.—Appropriations for any ex-
19 penses of the Internal Revenue Service including proc-
20 essing tax returns for years prior to the repeal of the taxes
21 repealed by title I of this Act, revenue accounting, man-
22 agement, transfer of payroll and wage data to the Social
23 Security Administration for years after fiscal year 2011
24 shall not be authorized.

130

1      (b) RECORDS.—Federal records related to the admin-
2  istration of taxes repealed by title I of this Act shall be
3  destroyed by the end of fiscal year 2011, except that any
4  records necessary to calculate Social Security benefits
5  shall be retained by the Social Security Administration
6  and any records necessary to support ongoing litigation
7  with respect to taxes owed or refunds due shall be retained
8  until final disposition of such litigation.

9      (c) CONFORMING AMENDMENTS.—Section 7802 is
10  amended—

11      (1) by striking subsections (a) and (b) and by
12      redesignating subsections (c) and (d) as subsections
13      (a) and (b),

14      (2) by striking "Internal Revenue Service" each
15      place it appears and inserting "Department of the
16      Treasury", and

17      (3) by striking "Commissioner" or "Commis-
18      sioner of Internal Revenue" each place they appear
19      and inserting "Secretary".

20      (d) EFFECTIVE DATE.—The amendments made by
21  subsection (c) shall take effect on January 1, 2011.

22  **SEC. 302. ADMINISTRATION OF OTHER FEDERAL TAXES.**

23      (a) IN GENERAL.—Section 7801 (relating to the au-
24  thority of the Department of the Treasury) is amended
25  by adding at the end the following:

131

1    "(d) EXCISE TAX BUREAU.—There shall be in the

2 Department of the Treasury an Excise Tax Bureau to ad-

3 minister those excise taxes not administered by the Bu-

4 reau of Alcohol, Tobacco and Firearms.

5    "(e) SALES TAX BUREAU.—There shall be in the De-

6 partment of the Treasury a Sales Tax Bureau to admin-

7 ister the national sales tax in those States where it is re-

8 quired pursuant to section 404, and to discharge other

9 Federal duties and powers relating to the national sales

10 tax (including those required by sections 402, 403, and

11 405). The Office of Revenue Allocation shall be within the

12 Sales Tax Bureau.".

13    (b) ASSISTANT GENERAL COUNSELS.—Section

14 7801(b)(2) is amended to read as follows:

15        "(2) ASSISTANT GENERAL COUNSELS.—The

16        Secretary of the Treasury may appoint, without re-

17        gard to the provisions of the civil service laws, and

18        fix the duties of not more than 5 assistant general

19        counsels.".

20 **SEC. 303. SALES TAX INCLUSIVE SOCIAL SECURITY BENE-**

21        **FITS INDEXATION.**

22    Subparagraph (D) of section 215(i)(1) of the Social

23 Security Act (42 U.S.C. 415(i)(1)) (relating to cost-of-liv-

24 ing increases in Social Security benefits) is amended to

25 read as follows:

132

1   "(D)(i) the term 'CPI increase percentage',

2 with respect to a base quarter or cost-of-living quar-

3 ter in any calendar year, means the percentage

4 (rounded to the nearest one-tenth of 1 percent) by

5 which the Consumer Price Index for that quarter (as

6 prepared by the Department of Labor) exceeds such

7 index for the most recent prior calendar quarter

8 which was a base quarter under subparagraph

9 (A)(ii) or, if later, the most recent cost-of-living

10 computation quarter under subparagraph (B);

11   "(ii) if the Consumer Price Index (as so pre-

12 pared) does not include the national sales tax paid,

13 then the term 'CPI increase percentage', with re-

14 spect to a base quarter or cost-of-living quarter in

15 any calendar year, means the percentage (rounded

16 to the nearest one-tenth of 1 percent) by which the

17 product of—

18    "(I) the Consumer Price Index for that

19   quarter (as so prepared), and

20    "(II) the national sales tax factor,

21 exceeds such index for the most recent prior calendar

22 quarter which was a base quarter under subparagraph

23 (A)(ii) or, if later, the most recent cost of living computa-

24 tion quarter under subparagraph (B); and

133

1          "(iii) the national sales tax factor is equal to 1

2     plus the quotient that is—

3               "(I) the sales tax rate imposed by section

4          101 of the Internal Revenue Code of 2007, di-

5          vided by

6               "(II) the quantity that is 1 minus such

7          sales tax rate.".

○