**RECEIVED**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

MAY 1 5 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Rodney K. Justin, A sentient human being,   )
                                               )
                 Plaintiff,         )
                                               )
            v.                         )
                                               )
UNITED STATES, a Federal corporation, et al.,  )
              Defendants.     )
                                               )
                                             )

Civil No. 1:07-cv-02334-HHK

**PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTION TO DISMISS**

COMES NOW Rodney K. Justin, Plaintiff, proceeding on his own behalf moving this Court deny the Defendants' motion to dismiss as a matter of fact and law. Plaintiff includes evidence sufficient to establish that this Court has both subject matter and in personam jurisdiction over all verified claims alleged if the Court takes into consideration the entire record. *". . . the court must consider the entire record in the action, not just those pieces of evidence that have been singled out for attention by the parties."* See *Clinkscales v. Chevron USA, Inc.*, 831 F.2d 1565, 1570 (11th Cir. 1987). The Defendants are moving this Court dismiss all claims in the Verified Complaint. Contrary to the Defendants' position, this Court has both in personam and subject matter jurisdiction over the Defendants, as no other conclusion can be drawn.

Upon the Court's thorough nonbiased review of the case-in-chief, this Court will determine that as a matter of fact and law, the Plaintiff has effectively established jurisdiction, leaving the Defendants compelled to answer the Verified Complaint. *"The right to sue and defend in the courts is the alternative of force. In an organized society it is the right conservative of all other rights, and lies at the foundation of orderly government."* See *Chambers v. Baltimore &*

_Ohio Railroad_, 207 U.S. 148. In support of this response, Plaintiff refers the Court to the memorandum of points and authorities included herewith.

## MEMORANDUM OF LAW AND BRIEF IN SUPPORT

### The United States Supreme Court Established The Doctrine Of Substance Over Form Regarding The Filing Of A Complaint

The Plaintiff, unable to afford an attorney, filed his Verified Complaint in _pro se_, and, as cited in _Haines_ supra, should not to be held to the high standards of a bar attorney. The substance of Plaintiff's Verified Complaint has effectively established the elements necessary to cede this Court's jurisdiction. The United States Supreme Court stated in _Frank Lyon Co. v. United States_, 435 U.S. 561 (1978) 98 S.Ct. 1291, "In applying this doctrine of substance over form, the Court has looked to the objective economic realities of a transaction rather than to the particular form the parties employed. ***The Court has never regarded 'the simple expedient of drawing up papers,'*** _Commissioner_ v. _Tower_, 327 U.S. 280, 291 (1946), ***as controlling for tax purposes when the objective economic realities are to the contrary. In the field of taxation, administrators of the laws, and the courts, are concerned with substance and realities, and formal written documents are not rigidly binding.***" _Helvering_ v. _Lazarus & Co._, 308 U.S., at 255. See also _Commissioner_ v. _P. G. Lake, Inc._, 356 U.S. 260, 266-267 (1958); _Commissioner_ v. _Court Holding Co._, 324 U.S. 331, 334 (1945). ***Nor is the parties' desire to achieve a particular tax result necessarily relevant.***" _Commissioner_ v. _Duberstein_, 363 U.S. 278, 286 (1960).

The Plaintiff, prior to filing his Verified Complaint, went through many pains and penalties in a good faith attempt to properly cite the causes of action and requisite jurisdictional grounds to foreclose on the type of aggrandizing the Defendants would employ in an attempt to get this

case dismissed. Still, Plaintiff is challenged with reestablishing what is already well established on the Court's record.

### Factual Background And Summary Of Events

1.    On or about April 13, 2005 or soon thereafter, Revenue Officer RON BROWN caused Plaintiff Rodney K. Justin's compensation for labor property in the amount of $54,583.00 to be seized via an alleged Form 668-A (ICS) - Notice of Levy from Plaintiff's then contracted employer, CALLAWAY ASSOCIATES, LLP – causing economic hardship and devastation to said Plaintiff' ability to provide a living for his family – resulting not only in the termination of said Plaintiff, but causing a fifty percent (50%) loss in labor compensation property.

2.    On or about August 31, 2005, Plaintiff Rodney K. Justin filed four (4) Forms 843 - Claim for Refund and Request for Abatement for the following tax years: 1997 in the amount of $42,595.65; 1998 in the amount of $132,188.36; 1999 in the amount of $17,251.54; and 2000 in the amount of $9,219.77; and Form 12661 - Disputed Issue Verification and Form 12277 - Application for Withdrawal of Filed Form 668 (Y) - Notice of Federal Tax Lien with an affidavit and exhibits attached, demanding the release of the Notices of Federal Tax Liens filed for tax years 1997, 1998, 1999 and 2000, which resulted in no response from the area director or any other fiduciaries petitioned for such release.

3.    Plaintiff petitioned the United States Congress for assistance and received responses from Elizabeth Dole dated September 28, 2005, October 12, 2005 and October 27, 2005, resulting in the Taxpayer Advocate Jackie Bracey – practicing law without a license – responding to issues completely unrelated to concerns of the Plaintiff in this instant case.

4.    On or about December 3, 2005 and December 15, 2005, alleged Special Agent BOBBY MARTENS issued 2039 Summonses bearing the term "Criminal Investigation," seeking to

obtain books, records and other confidential financial information from WACHOVIA BANK, WORLD'S FOREMOST BANK, FIRST CITIZENS BANK, NORTHWEST MUTUAL LIFE INSURANCE COMPANY, SMITH BARNEY INC., and MELLON INVESTOR SERVICES.

5.      On or about April 30, 2006, Plaintiff Rodney K. Justin filed and served 1040 U.S. Individual Income Tax Returns for the tax years, 1997, 1998, 1999, 2000, 2001, 2002, 2003, 2004 and 2005 to IRS Atlanta, Georgia and copies to Area 3, Area Director, Ron Brown, and others, via certified mail. Plaintiff signed and caused to be filed Forms 1040 U.S. Individual Income Tax Return to the best of Plaintiff's knowledge, understanding and belief as to the accuracy of the prepared returns for tax years 1997, 1998, 1999, 2000, 2001, 2002, 2003, 2004 and 2005; and Plaintiff believed these were the returns required to be filed, but were prepared, signed and filed under duress.

6.      Between May 16, 2006 and July 19, 2006, Plaintiff Rodney K. Justin filed and served a Notice and Demand for Certificate of Release of Lien for the years 1997 to 2000, and mailed a copy to the Department of the Treasury, Internal Revenue Service, District Director, Attn: Chief, Special Procedures with IRS Form 12277 - Application for Withdrawal of Filed Form 668(Y), IRS Form 12661 - Disputed Issue Verification, IRS Form 843 - Claim for Refund and Request for Abatement, and a "Notice of Appeals For Denial of Request For Abatement, Not Refund" and Appeals Form 9423.

7.      On or about August 11, 2006, Plaintiff received an appeals response letter from Appeals Officer JENNIFER R SAWYER and on or about August 21, 2006, Plaintiff filed and served a response to the appeals, specifically stating his claim with authority and mailed a copy by Certified Mail to Area 4, Area Director, Compliance Technical Support Manager.

8.     On or about September 5, 2006, Plaintiff received an appeals response letter from alleged Appeals Team Manager JENNIFER R. SAWYER stating, "*I have completed my review of your denied claim. I find there is no basis to allow it,*" referencing tax years ending December 31, 1997 through 2000.

9.     That on or about April 6, 2007, Plaintiff filed and served a Form 9423 - Collection Appeal Request and a Form 12277 - Application for Withdrawal of Filed Form 668(Y) - Notice of Federal Tax Lien, with a verified Notice of Administrative Claim and Demand to Release Notice of Federal Tax Lien and Return of Property Seized, stating in detail the claim and injuries and dollar amounts thereof; and sent via certified mail to the Department of the Treasury, IRS, Area 4, Area Director, Compliance Technical Support Manager, and sent copies to the following:  Department of the Treasury, IRS, Attn: Ron Brown, C. Sherwood, Leanna Jarrells, and the Treasury Inspector General for Tax Administration, Alberto R. Gonzales, Chief Counsel Donald L. Korb in Washington, DC; and CCP Lien Unit in Cincinnati, Ohio.

10.     On or about July 10, 2007, Plaintiff received a letter dated July 10, 2007 from Charles E. Hunter, Special Agent in Charge, of the Department of the Treasury, Internal Revenue Service Criminal Investigation, stating: "This office has under consideration a recommendation that criminal proceedings be instituted against your for evasion of assessment of taxes for tax years 2001, 2002, 2003, and 2004 in violation of I.R.C. § 7201," with an offer of a conference regarding this matter scheduled for July 25, 2007 at 10:00 a.m.

11.     On or about July 18, 2007, Plaintiff timely responded to the above letter, which Plaintiff mailed to Charles E. Hunter, Special Agent in Charge explaining that he has filed all tax returns for tax years 2001 through 2004 and has in no way attempted to evade or defeat any tax.

12.    On or about September 12, 2007, Plaintiff received a letter from the Charles E. Hunter, Special Agent In Charge, Criminal Investigation, Charlotte Field Office, stating that: *"A Report recommending you be prosecuted for attempting to evade the assessment of income taxes for the years 2001 through 2004 and in violation of Title 26, United States Code, Section 7201, was forwarded to Department of Justice, Tax Division on this date."*

13.    There has never been a notice of deficiency or any other notice submitted by Defendants that would give Plaintiff the opportunity to dispute, file an administrative claim or any other administrative remedy prior to being referred to the Department of [Justice] for alleged violation of the internal revenue laws.

14.    Although the Plaintiff is of the conviction that the facts and law speak unambiguously to the matters present herein and throughout, having experienced firsthand the peril of American Citizens acting as *pro se* litigants, proceeding before a prejudiced and biased judiciary acting with impunity and favoritism on behalf of the UNITED STATES and its employees regarding these serious life and liberty issues, and having no confidence in the judiciary due to the fear of reprisal and the potential for abuse of process as previously experienced, the Plaintiff has submitted a copy of this First Amended Verified Complaint to the appropriate fiduciary Congressional authorities to effect the record for oversight and review purposes.

## I.
## Plaintiff Foreclosed On The Exhaustion Of His Administrative Remedies, Leaving This Court With Subject Matter Jurisdiction

15.    Plaintiff's Verified Complaint, supported with evidence, concluded that he exhausted his administrative remedies, although such exhaustion is not necessary. The Supreme Court recently held in <u>*Jones v. Bock*</u>, __U.S.__, 127 S. Ct. 910 (2007), that the "failure to exhaust [administrative] remedies is no basis for dismissal [under Federal Rule of Civil Procedure

12(b)(6)], but is, rather, an affirmative defense." *See also Jones*___ *U.S. at* ___, 127 S.Ct. at 920-21 (holding that an exhaustion defense cannot be "subsumed" within the larger rubric of the defense of "failure to state a claim" under Rule (12)(b)(6) because "[w]hether a particular ground for opposing a claim may be basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not the nature of the ground in the abstract"); andthe Plaintiff exhausted his administrative remedies.

16.    Plaintiff has attempted to communicate with the Defendants in the exhaustion of his administrative remedies, but all efforts have fallen on deaf ears. Thus, the courts have excused exhaustion when such a requirement *"would be futile because of the certainty of an adverse decision."* 3 K. Davis, *Administrative Law Treatise* 20.07 (1958). But since that is not the case here, the Court need only review the evidence of exhaustion as submitted herein.

17.    As cited above, between October 2004 and September 2007 Plaintiff has been communicating with the IRS in the exhaustion of his administrative remedies and was completely ignored by Service employees, save to escalate the matter. *"judgment for damages shall not be awarded under [section 7433] unless the court determines that the Plaintiff has exhausted the administrative remedies available to such Plaintiff within the Internal Revenue Service."* 26 U.S.C. § 7433(d)(1). *Several courts have "interpreted the exhaustion requirement as jurisdictional" in nature. Bennett v. United States*, 361 F. Supp.2d 510, 514 (W.D. Va. 2005); see e.g., *Conforte v. United States*, 979 F.2d 1375, 1377 (9th Cir. 1992); *Info. Res., Inc. v. United States*, 950 F.2d 1122, 1125-27 (5th Cir. 1992); *Simmons v. United States*, 875 F. Supp. 318, 319 (W.D. N.C. 1994); *Music Deli & Groceries, Inc. v. I.R.S.*, 781 F. Supp. 992, 997 (S.D. N.Y. 1991).

18.    The Plaintiff's attempt to communicate with the Defendants has been absolutely futile. *"The administrative remedy is inadequate where the agency has expressed a willingness to act, but the relief it will provide through its action will not be sufficient to right the wrong."* <u>Randolph-Sheppard</u>, 795 F.2d at 107 (original emphasis omitted). As cited in <u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 392, 403 U.S. 388 (1971). *"An agent acting — albeit unconstitutionally — in the name of the United States possesses a far greater capacity for harm than an individual trespasser exercising no authority other than their own."* Cf. <u>Amos v. United States</u>, 255 U.S. 313, 317 (1921); <u>United States v. Classic</u>, 313 U.S. 299, 326 (1941).

19.    The term "exhaustion" applies to "two distinct legal concepts." <u>Avocados Plus Inc. v. Veneman</u>, 370 F.3d 1243, 1247 (D.C. Cir. 2004). The first, known as "non-jurisdictional exhaustion," is a "judicially created doctrine" that the court may, under certain circumstances and "in its discretion, excuse." <u>Id</u>. The second, called "jurisdictional exhaustion," is a statutory "predicate to judicial review . . . rooted, not in prudential principles, but in Congress' power to control the jurisdiction of the federal courts." <u>Id</u>. (citing <u>E.E.O.C. v. Lutheran Soc. Servs</u>., 186 F.3d 959, 963-64 (D.C. Cir.1999)).  Because courts "presume exhaustion is non-jurisdictional," <u>Id</u>. at 1248, there must be "[s]weeping and direct statutory language indicating that there is no federal jurisdiction prior to exhaustion, or the exhaustion requirement is treated as an element of the underlying claim." <u>Weinberger v. Salfi</u>, 422 U.S. 749, 757 (1975).

20.    During the entire administrative process the Defendants made their hardline position clear and have not been committed to following any internal revenue laws or procedural requirements and have articulated a clear position against the Plaintiff. *"An adverse decision can also be certain if an agency has articulated a clear position on the issue which it has demonstrated it would be unwilling to reconsider."* <u>Id</u>. (citing <u>Etelson v. Office of Pers. Mgnt.</u>,

684 F.2d 918, 925 (D.C. Cir. 1982). No more is necessary to establish that exhaustion has come to fruition in this instant case; and the United States Defendants have taken a position and waived sovereign immunity and have consented to being sued.

## III.
## Sovereign Immunity Has Been Waived And Plaintiff Can Challenge The Administrative Summonses

25.    Counsel, seeking to dismiss Count I of Plaintiff's complaint states on page 3 § 2 of the memorandum that:  *"Count I of plaintiff's complaint challenges the administrative summons issued by the Service.  (Compl. 15.) Contrary to plaintiff's assertion, the Administrative Procedures Act does not provide a cause of action for such a claim . . . Moreover, the sovereign immunity of the United States has been preserved with respect to tax controversies and the APA."*

26.    Plaintiff has invoked the tenable jurisdiction of the Administrative Procedure Act (APA). In this instant case, the Plaintiff has no access to judicial review to challenge the constitutionality regarding the statutory language, construction or ambiguity of 26 U.S.C. § 7201, 7203 and 7851 as ". . . *the Act was not intended to bar an action where . . . Congress has not provided the plaintiff with an alternative legal way to challenge the validity of a tax."* See *South Carolina v. Regan,* 465 U.S. 367, 373, 104 S.Ct. 1107, 79 L.Ed.2d 372 (1984). The relief sought by the Plaintiff under the APA is non-monetary, amongst other things, to obtain relief regarding the procedural validity of the agency action.

27.    The Administrative Procedure Act ("APA"), however, waives the United States' sovereign immunity for actions brought by [p]ersons *suffering a legal wrong* at the hands of an agency when those [p]ersons seek relief other than monetary damages, pursuant to 5 U.S.C. § 702(a). *"Another waiver of sovereign immunity may be found in a statute that creates a federal*

*agency, corporation or other artificial entity, and gives to that entity, the power to sue and be sued."* See *FDIC v. Meyer*, 510 U.S. 471, 473, 114 S. Ct. 996, 127 L. Ed. 2d 308 (1994).

28.     In *The Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 525 (9th Cir. 1989), the court cited the intent of Congress in passing the APA in so stating: *". . . on its face, the 1976 amendment to § 702 waives sovereign immunity in all actions seeking relief from official misconduct except for money damages."* The court went on to state: ". . . nothing in the legislative history of the 1976 amendment of § 702 suggests that Congress intended to limit the waiver of sovereign immunity to the specific forms of "agency action" enumerated in § 551(13). On the contrary, *Congress stated that "the time [has] now come to eliminate the sovereign immunity defense in all equitable actions for specific relief against a Federal agency or officer acting in an official capacity."* H.Rep. No. 1656, 94th Cong., 2d Sess. 9, *reprinted in* 1976 U.S. Code Cong. & Admin. News 6121, 6129 (emphasis supplied). *"Congress singled out types of government conduct similar to the alleged INS conduct in this case — "tax investigations" and "control of subversive activities" — as appropriate for judicial review under the amended version of § 702."*

29.     The Plaintiff has been damaged as a direct and proximate result of the Defendants' failure to obtain approval from the Secretary or the Secretary's delegate, presumed to be the approving officer, in writing, as commanded by 26 CFR § 301.7602-1(b)(2), and Plaintiff has the right to challenge the validity of these summonses because sovereign immunity has been waived for actions brought by [p]ersons *suffering a legal wrong* at the hands of an agency when those [p]ersons seek relief other than monetary damages, pursuant to 5 U.S.C. § 702(a). Count I of Plaintiff's complaint must not be dismissed; and the motion to dismiss must be denied.

## IV.
## The Anti-Injunction Act Does Not Bar Plaintiff's Action

30.    Counsel for the Defendants erroneously asserts on pages 5: *"The Anti-Injunction Act specifies that no court shall exercise jurisdiction over a suit for the "purpose of restraining the assessment or collection of any tax" as is the patent purpose of plaintiff's complaint"* and *"Although the Supreme Court has recognized a narrow, judicial exception to §7421, the exception is inapplicable to the present case."* citing the most quoted case of *Enochs v. Williams Packaging & Navigation Co.*, 370 U.S. 1, 6-7 (1962).

32.    However, The Supreme Court clarified *Williams Packaging* in *Shapiro* wherein the Court explained, *"Whether the Commissioner has a chance of ultimately prevailing for purposes of the Williams Packing exception is a question to be resolved on the basis of the information available to the Commissioner at the time of the suit.* See *Commissioner v. Shapiro*, 424 U.S. 614, 615 (1976), and the Government has submitted no documentary evidence sufficient to establish that it has a chance of ultimately prevailing on the merits.

33.    In *Commissioner v. Shapiro*, *Id* at 616 and 617, the Court held that ". . . *the Internal Revenue Service may not "assess" a tax or collect it, by levying on or otherwise seizing a taxpayer's assets, until the taxpayer has had an opportunity to exhaust his administrative remedies, which include an opportunity to litigate his tax liability fully in the Tax Court, 26 U.S.C. § 6212, 6213 . . . and if the Internal Revenue Service does attempt to collect the tax by levy or otherwise, before such exhaustion of remedies in violation of § 6213, the collection is not protected by the Anti-Injunction Act and may be restrained by a United States district court at the instance of the taxpayer. §§ 6213(a), 7421(a)."*

34.    The AIA includes "exception" clauses, citing Sections 6212(a) and (c) and 6213(a) of the Code wherein the UNITED STATES Defendants expressly waive immunity under the Act

and consent to being sued when no assessment has been made. The unambiguous language of 26 U.S.C. § 6213(a) states in pertinent part:  *"Except as otherwise provided* **in section 6851, 6852, or 6861** *no assessment of a deficiency in respect of any tax imposed* by subtitle A, or B, chapter 41, 42, 43, or 44 *and no* levy or *proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer* . . ." The United States Supreme Court and Congress have repeatedly stated: *"The starting point for interpreting a statute is the language of the statute itself; absent a clearly expressed legislative intention to the contrary, that language must be ordinarily regarded as conclusive."* See *Product Safety Comm'n v. GTE Sylvania*, 447 US 102, 64 L Ed 2d 766, 100 S Ct. 2051 (1980), further employing the term "shall", legislating mandatory language in its statutory construction.

35.     The Anti-Injunction Act precludes this Court from exercising jurisdiction over actions that seek to restrain the assessment and collection of federal income taxes. Section 7421(a) of the Internal Revenue Code provides in relevant part as follows:

> "(a) Tax. Except as provided in sections 6015 (e), 6212 (a) and (c), 6213 (a), 6225 (b), 6246 (b), 6330 (e)(1), 6331 (i), 6672 (c), 6694 (c), and 7426 (a) and (b)(1), 7429 (b) and 7436, *no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person,* whether or not such person is the person against whom such tax was assessed."

36.     The language of this statute states in pertinent part that, " . . . *no suit restraining the assessment or collection of any tax . . . "* which, under its present statutory construction, *must be construed to mean* that a procedurally valid, statutory assessment had been made for the purpose of collection. The AIA includes "exception" clauses, citing Sections 6212(a) and (c) and 6213(a) of the Code wherein the UNITED STATES Defendants expressly waive immunity under the Act and consent to being sued for failure to comply with these provisions.

37.     The Supreme Court reasoned in *Commissioner v. Shapiro* " . . . *that unless the Government has some obligation to disclose the factual basis for its assessments, either in response to a discovery request or on direct order of the court, the exception to the Anti-Injunction Act provided in Enochs v. Williams Packing Co., supra, is meaningless. The taxpayer can never know, unless the Government tells him, what the basis for the assessment is and thus can never show that the Government will certainly be unable to prevail. We agree with Shapiro.*" *Id.*  (424 U.S. 614) at 626 and 627.

38.     In *Enochs v. Williams Packing Co.*, *supra*, the Court held that an injunction may be obtained against the collection of any tax if (1) it is "clear that under no circumstances could the Government ultimately prevail" and (2) "equity jurisdiction" otherwise exists, *i.e.*, the taxpayer shows that he would otherwise suffer irreparable injury. 370 U.S. 1, at 7. The Court also said that "the question of whether the Government has a chance of ultimately prevailing is to be determined on the basis of the information available to it at the time of the suit," *ibid.* "*Williams Packing did not hold that the taxpayer's burden of persuading the District Court that the Government will under no circumstances prevail must be accomplished without any disclosure of information by the Government. It says instead that the question will be resolved on the basis of the information available to the Government at the time of the suit.*"

39.     As cited in the Plaintiff's Verified Complaint on pages 18 and 19, Count II, ¶¶ 38 through 44, cogent documentary evidence concludes that the IRS has proceeded in violation of 26 U.S.C. §§ 6212(a), 6213(a), 6751(b), giving rise to an action cognizable under 7429(a)(1), as the Plaintiff effectively demonstrated that the jurisdictional bar of the AIA is waived by the UNITED STATES at 26 U.S.C. § 7421(a) when the IRS failed to comply with 26 U.S.C. §§

6212(a) and 6213(a) and did not issue any Notices of Deficiency prior to filing the administrative Notices of Levy – one of the exceptions to the AIA.

40.    In keeping with the thrust of the Code the Courts stated that *"A Notice of Deficiency must be mailed before an assessment and/or any subsequent levy or lien on property may be made."* 26 U.S.C. § 6213(a). *Simply put, the Notice serves as a prerequisite to a valid assessment by the IRS." Robinson v. United States,* 920 F.2d 1157, 1158 (3d Cir. 1990). *"An assessment is illegal and void if no required (valid) deficiency notice is sent to the taxpayer."* See *United States v. Williams,* (1958 DC NY) 161 F. Supp 158. 58-1 USTC 9213. (20 Fed Proc., L Ed 48:440).

41.    Contrary to Counsel's misguided assertion, Plaintiff is not seeking to restrain the LAWFUL ASSESSMENT or COLLECTION of any internal revenue tax, but is disputing the validity of the UNITED STATES Defendants' intent to put the cart before the horse and 'prosecute' the Plaintiff criminally prior to the assessment of an alleged federal tax liability as prohibited under 26 U.S.C. 6213(a), giving rise to the waiver of sovereign immunity and consent to being sued under the exception clauses of the AIA. Therefore, the Court must deny the Defendants' motion to dismiss and order that the Defendants to answer the Plaintiff's Complaint as the only just and proper remedy.

## V.
### This Court Has Subject Matter Jurisdiction To Determine The Constitutionality of A Federal Statute And Defendants Did Not Rebut The Void For Vagueness Of Sections 7201 and 7203

42.    Counsel for the UNITED STATES failed to dispute or even address the Plaintiff's Verified Complaint at Count III and IV on pages 19 through 31    ¶¶ 45 through 85 that challenges that 26 U.S.C. §§ 7201 and 7203 of the *prima facie* internal revenue laws are void for vagueness. It is axiomatic that "Article III standing is a fundamental prerequisite to any

exercise of the court's jurisdiction. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), and requires, at the "irreducible constitutional minimum," *Id.*, a showing that the litigant has suffered a concrete and particularized injury that is actual or imminent, traceable to the challenged act, and redressable by the court. See *Allen v. Wright*, 468 U.S. 737, 751 (1984); *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 37-38, 41-42 (1976). A petitioner must support each element of its claim to standing "by affidavit or other evidence." *Defendants of Wildlife*, 504 U.S. at 561; *see Sierra Club v. EPA*, 292 F.3d 895, 899 (D.C. Cir. 2002).

43.    As the Plaintiff's Verified Complaint reflects, the concrete and particularized injury suffered that was imminent and is now actual is wherein on or about April 4, 2008 the Plaintiff Rodney Justin was charged in the United States District Court, Middle District of North Carolina at cause no. 1:08 CR 98-1 for an alleged criminal violation of § 7203 willful failure to file a tax return for tax years 2001 through 2004, although the returns were filed under extreme duress. In *Bordenkircher v. Hayes*, 434 U.S. 357 (1978) *Id.* at 364, the Supreme Court held ***"To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort,*** see North Carolina v. Pearce, supra, at 738 (opinion of Black, J.), ***and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is "patently unconstitutional."*** Chaffin v. Stynchcombe, supra, at 32-33, n. 20. See United States v. Jackson, 390 U.S. 570.

44.    In *Grayned v. City of Rockford*, 408 U.S. 104 (1972), the Supreme Court reemphasized ***"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is***

*prohibited, so that he may act accordingly. <u>Vague laws may trap the innocent by not</u>* *<u>providing fair warning. Second, if arbitrary and discriminatory enforcement is to be</u>* *<u>prevented, laws must provide explicit standards for those who apply them</u>. A vague law* *impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on* *an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory* *application. Third, but related, where a vague statute "abut[s] upon sensitive areas of basic* *First Amendment freedoms," it "operates to inhibit the exercise of [those] freedoms."* *Uncertain meanings inevitably lead citizens to "`steer far wider of the unlawful zone' . . .* *than if the boundaries of the forbidden areas were clearly marked."* Id at 109 and 110.

45.       The courts have determined that *"A criminal statute is susceptible to such an attack if* *it either prohibits or requires the performance of an act in terms so uncertain that persons of* *average intelligence would have no choice but to guess at its meaning and modes of* *application.* United States v. Nason*, 269 F.3d 10, 22 (1st Cir. 2001). Vagueness of this sort* *raises the possibility that ordinary people will not understand what conduct is forbidden and* *the possibility of arbitrary or discriminatory enforcement.* Kolender v. Lawson*, 461 U.S. 352,* 357 (1983).

46.       In this instant case the Plaintiff is challenging the ambiguous language and statutory construction of §§ 7201 and 7203, for which he is now charged. "Under the rule of lenity, grievous ambiguity in a penal statute is resolved in the defendant's favor. See *Lanier,* 520 U.S. at 266, 117 S.Ct. 1219. *"The simple existence of some statutory ambiguity, however, is not* *sufficient to warrant application of that rule, <u>for most statutes are ambiguous to some</u>* *<u>degree.</u>"* Muscarello v. United States*,* 524 U.S. 125, 138-39, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998). Rather, the rule only applies if *"there is a grievous ambiguity or uncertainty in the*

*statute." Id.* at 139, 118 S.Ct. 1911 (quotation marks and citation omitted) (emphasis added). Furthermore, lenity *"applies only if, after seizing everything from which aid can be derived, [a court] can make no more than a guess as to what Congress intended."* Reno v. Koray, 515 U.S. 50, 65, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995) (quotation marks and citation omitted); accord United States v. Balint, 201 F.3d 928, 935 (7th Cir. 2000).

47.       The Fifth Circuit recently cited *Cheek* in United States v. Kay, 05-20604 (5th Cir. 1-10-2008), compare *Cheek*, 498 U.S. at 199-200, to remind us that *("The proliferation of statutes and regulations has sometimes made it difficult for the average citizen to know and comprehend the extent of the duties and obligations imposed by the tax laws.* Congress has accordingly softened the impact of the common-law presumption by making specific intent to violate the law an element of certain federal criminal tax offenses . . . *This special treatment of criminal tax offenses is largely due to the complexity of the tax laws.")* See Cheek v. United States, 498 U.S. 192 (1991), 111 S.Ct. 604, thus complexity equates to vagueness in the final scheme of things.

48.       Furthermore, the Defendants' failure to deny the factual allegations set out in Count III and IV of the Plaintiff's Verified Complaint is deemed an admission pursuant to Fed.R.Civ.P 8(d). See Lipton Indus., Inc. v. Ralston Purina Co., 670 F.2d 1024, 1030 (C.C.P.A. 1982); King Vision v. J.C. Dimitri's Restaurant, 180 F.R.D. 332, 333 (N.D. Ill 1998), thus admitting to the Court's jurisdiction. A blanket assertion that the Court lacks subject matter jurisdiction without specifying with particularity the Count that is alleged to lack such jurisdiction is wholly prejudiced to the Plaintiff. Therefore, the Court must deny the UNITED STATES' motion to dismiss.

**WHEREFORE,** in the interest of justice and considering the entire record, Plaintiff moves this Honorable Court to deny the Defendants' motion to dismiss all Counts and to answer the Verified Complaint as the only just and proper remedy.

Respectfully submitted.

## VERIFICATION

I, Rodney K. Justin, declare under penalty of perjury pursuant to 28 U.S.C. § 1746(1), that I believe the above to be true and correct to the best of my knowledge, understanding and belief. All Rights retained without recourse.

On this ___ day _____, 2008

Rodney K. Justin, Plaintiff
c/o 620 Virginia Drive
Woodleaf, North Carolina [27054]

## CERTIFICATE OF SERVICE

I, Rodney K. Justin certified that on _____, 2008, I mailed a true copy of the

foregoing Plaintiff's Response to Defendants' Motion to Dismiss with memorandum of law and

brief in support to the following:

Benjamin J. Weir
U.S. Department of Justice
P.O. Box 227, Ben Franklin Station
Washington, DC 20044

_____
Rodney K. Justin, Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Rodney K. Justin, A sentient human being, | ) | |
| | ) | Case No. 1:07-cv-02334-HHK |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| UNITED STATES, a Federal corporation; et al., | ) | |
| | ) | |
| Defendants. | ) | |

Having considered the Plaintiff's Response To Defendants' Motion to Dismiss, and any opposition thereto, the Court concludes that the motion should be denied. Accordingly, it is this

_____ day of _____, 2008

**ORDERED** that the United States' motion to dismiss is DENIED; it is further

**ORDERED** that the United States shall answer the complaint within 20 days of this Order; it is further

**ORDERED** that the Clerk shall distribute conformed copies of this order to the representative of the parties listed below.

_____
UNITED STATES DISTRICT JUDGE

COPIES TO:

Benjamin J. Weir
U.S. Department of Justice
P.O. Box 227, Ben Franklin Station
Washington, DC 20044

Rodney K. Justin
c/o  620 Virginia Drive
Woodleaf, North Carolina [27054]